### In re JONES et al.

(District Court, D. South Carolina. November 8, 1902.)

**1. BANKRUPTCY—PARTNERSHIP—LIENS—PREFERENCE.**

Under Bankr. Act 1898, § 3, subd. 2 [U. S. Comp. St. 1901, p. 3422], declaring it to be an act of bankruptcy for a person to transfer, while insolvent, any portion of his property to a creditor with intent to make a preference, section 60a [U. S. Comp. St. 1901, p. 3445], providing that the person shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property which will enable a creditor to obtain a greater percentage of his debt than other creditors of the same class, and section 67e [U. S. Comp. St. 1901, p. 3449], declaring that conveyances or incumbrances of property made by a person adjudged bankrupt within four months thereof shall be void if made with the intent to hinder, delay, or defraud other creditors,—a mortgage, given by an insolvent firm, within four months of bankruptcy proceedings against it, to secure a past indebtedness, and which conveys all the firm property, is void as giving to the creditor a preference.

In Bankruptcy.

N. W. Hardin and Haynesworth, Parker & Patterson, for Pollock. Hall & Willis, for trustee.

BRAWLEY, District Judge. This case is before me on exceptions of A. H. Pollock to the report of the referee disallowing a chattel mortgage of two thousand ($2,000) dollars against the bankrupt estate.

Jones and Duff were partners engaged in a general mercantile business in the town of Blacksburg, S. C. They were also dealers in cotton in a small way. The business was conducted by Duff; Jones, the partner who furnished most of the capital, living in the country, and not giving much personal attention to it. The testimony shows that Duff bought 26 bales of cotton from A. H. Pollock in February, of the value of one thousand and forty ($1,040) dollars, the purchase being for cash, but the same was not paid, Pollock not pressing for the money and receiving no security, as he considered Jones & Duff perfectly safe. In April, Duff informed Pollock that he had the money to pay him for the cotton, but that he needed some money and wanted to borrow two thousand ($2,000) dollars, and Pollock loaned him nine hundred and sixty ($960) dollars, which, with the amount then due for the cotton, made the sum of two thousand ($2,000) dol-

118 F.—43

lars, and on April 19th Jones & Duff gave Pollock four notes, each for the sum of five hundred ($500) dollars, payable, respectively, June 25, 1902, July 25, 1902, September 25, 1902, and October 25, 1902. These notes were all made by Duff in the name of the firm, and Jones had no knowledge of them. On May 28, 1902, Jones & Duff gave Pollock a note, of which the following is a copy:

"$2000.00.                                        Blacksburg, S. C., May 28, 1902.

"On or before June 25, 1902, for value received, we promise to pay A. H. Pollock $500.00; on July 25, 1902, $500.00; on Sept. 25, 1902, $500.00; on Oct. 25, 1902, $500.00, or order $2000.00, as aforesaid, with interest from date at eight per cent. per annum payable annually until paid in full. After maturity interest to become part of the principal. And should this note be placed in the hands of an attorney for collection we agree to pay ten per cent. attorney's fee.

"Witness our hands and seals.                    Jones and Duff. [L. S.]
"J. W. Duff."

To secure this note a chattel mortgage was executed on the same day by Duff, in the name of Jones & Duff, with a seal attached, conveying to A. H. Pollock all the stock of dry goods, groceries, etc., in the storehouse described, and all that might be added thereto, a bay horse and a one-horse wagon, also all open accounts that appeared on the books of Jones & Duff, and all notes, liens, and mortgages payable to said Jones & Duff, a list of which was attached. Duff died suddenly on July 14th, and on the same day this chattel mortgage was recorded. On July 22d the firm of Jones & Duff and J. D. Jones were adjudicated bankrupts on the petition of Jones, the surviving partner, and the estate has been administered in this court. The debts proved amount to something over twelve thousand ($12,000) dollars. The stock of goods covered by the mortgage has been sold and brought three thousand five hundred and eighty-eight ($3,588) dollars, and other assets about two hundred ($200) dollars. There are open accounts outstanding of the face value of between two and three thousand dollars. A list of the notes, liens, and other securities was turned over to Pollock, but no claim is made by him on that account. There is a life insurance policy of Duff of twenty-five hundred ($2,500) dollars, which is claimed to be a part of the bankrupt estate, but nothing has yet been collected thereon. There seems no doubt, therefore, that the firm of Jones & Duff is insolvent, and was insolvent at the time of the execution of the chattel mortgage, but there is no ground to believe that Pollock knew that the firm was insolvent, and he claims payment of the amount due him out of the estate in the hands of the trustee. The other creditors, who are mainly merchandise creditors, resist the payment on several grounds. The first is that one partner could not bind the copartnership by a sealed instrument. The second is that one partner could not, without the consent of his copartner, mortgage the goods of the copartnership. It is clear from the testimony that Jones, the surviving partner, did not know or ratify the acts of his partner, Duff, in the giving of the notes or the execution of the chattel mortgage.

These questions have been fully and ably argued, but I do not consider it necessary to decide them, for, in my opinion, the mortgage is void under the bankrupt law. The sections of the bankrupt act of

July 1, 1898 [U. S. Comp. St. 1901, p. 3418], that relate to the point under consideration, are section 3, subd. 2 [U. S. Comp. St. 1901, p. 3422], wherein it is declared to be an act of bankruptcy for a person to "transfer, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors"; section 60a [U. S. Comp. St. 1901, p. 3445] which provides that the "person shall be deemed to have given a preference if, being insolvent, he has * * * made a transfer of any of his property, and the effect of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class"; and section 67e [U. S. Comp. St. 1901, p. 3449] which provides that "all conveyances, transfers, assignments or incumbrances of his property, or any part thereof made or given by the person adjudged a bankrupt, under the provisions of this act, subsequent to the passage of this act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors or any of them, shall be null and void as against the creditors of such debtor."

If the mortgage had been given at the time the cotton was bought or the money loaned, it would have been protected under subdivision d of section 67 [U. S. Comp. St. 1901, p. 3449], which provides that "liens given or accepted in good faith and for a present consideration should not be affected by the act." But such is not the fact. When Pollock accepted the notes on April 19, 1902, without security, he became simply a creditor standing on the same plane with other creditors who had sold merchandise or loaned money to Jones & Duff. So when Duff in the name of Jones & Duff gave him the mortgage of that date, whereby all of the visible property of every nature and kind belonging to the firm of Jones & Duff was conveyed to Pollock, I cannot see how there can be any other conclusion than that the transaction was void because it enabled one of his creditors to obtain a greater percentage of his debt than any other of the same class. For it seems clear that at that time the firm of Jones & Duff was insolvent. Within less than two months from that date it was adjudicated bankrupt. The intent to prefer is to be assumed because it is the necessary consequence of the act, and the transfer to one creditor of all of the assets of the firm, without making any provision for its equal distribution, operates necessarily as a preference to the creditor, and must be taken as conclusive evidence that the preference was intended. Duff being dead, there is now no means of ascertaining whether he was, at the time of this transfer, conscious of the insolvency of the firm, but the fact being that within less than two months the firm was adjudicated bankrupt upon the petition of the surviving partner, and the assets having proved to be entirely insufficient to pay the debts of the firm, there seems to be no other conclusion than that it was insolvent at the date of the transfer, and it can make no difference that Pollock was ignorant of the fact, although his conduct in failing to put the mortgage on record until after Duff's death is a suspicious circumstance. There are certain expressions in the opinion of the court

in Pirie v. Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, cited by the court of appeals of this circuit in McNair v. McIntyre, 7 Am. Bankr. R. 638, 113 Fed. 113,—that "although a creditor may have received the preference within four months of the adjudication of bankruptcy, he may retain it if he did not have cause to believe it was intended as a preference, or with knowledge of his insolvency,"—which counsel for the petitioner rely upon to sustain their contention that this mortgage should be sustained by reason of the fact that the creditor was ignorant of the insolvency of the debtor at the time the transfer was made; but it seems to me that a careful consideration of these cases and of the law makes it impossible to uphold this mortgage. To do so would be in violation of the whole spirit and intent of the bankrupt law, which is designed to provide for an equal distribution among creditors of the estates of bankrupts.

I therefore sustain the referee in holding that the mortgage is void, but there seems to be no reason why he should not be allowed to prove his claim against the bankrupt estate, and to receive a dividend thereon equally with other creditors of the same class.