## Ex parte WARNER.

District Court, N. D. Oklahoma. August 29, 1927.

**1. Homicide ⬤⟿105—Officer may shoot one fleeing after committing felony and refusing to stop on demand.**

If one committing felony. flees from officer and refuses to stop when commanded, the latter, to enforce compliance, may shoot him.

**2. Habeas corpus ⬤⟿45(4)—Federal court will discharge state prisoner, held for an act done pursuant to federal law.**

A state prisoner, held for an act done pursuant to a law of the United States, will be discharged by a federal court on habeas corpus.

**3. Habeas corpus ⬤⟿45(2)—Acts of Congress relative to habeas corpus do not demand taking of prisoner from state. custody in advance of trial.**

Acts of Congress in relation to habeas corpus do not imperatively require taking a prisoner from state custody in advance of trial.

**4. Habeas corpus ⬤⟿45(4)—Prohibition agent, held for murder by state for shooting of prisoner arrested for felony and attempting to escape, held entitled to discharge on habeas corpus.**

A federal prohibition agent who, after arresting a person for commission, in his presence, of a felony under the laws of the United States, and, on attempt of the prisoner to escape, shot him, either accidentally, as claimed, or intentionally, *held* entitled to discharge on habeas corpus from custody of state authorities holding him for murder.

Habeas Corpus. On petition of Charles Warner for writ of habeas corpus. Writ granted.

O. F. Mason, of Miami, Okl., for petitioner.

A. L. Commons, Co. Atty., of Miami, Okl., and Louis N. Stivers, Asst. U. S. Atty., of Tulsa, Okl., opposed.

KENNAMER, District Judge. This case has been presented to the court upon an agreed statement of facts, supplemented by oral testimony introduced on behalf of the state of Oklahoma, through the county attorney of Ottawa county, and the testimony of the petitioner, Charles Warner. The agreed statement of facts is as follows:

"It is hereby stipulated and agreed by and between the said Charles Warner and the state of Oklahoma:

"(1) That the said Charles Warner is and was a prohibition agent at the time of the acts herein complained of.

"(2) That, at the time of the acts herein complained of, he was engaged in official duties pertaining to his office above mentioned.

"(3) That the deceased, Elmer Fulton, at the time of his death, was under arrest by the said Charles Warner, and at the time of the shooting was attempting to escape.

"(4) That the act for which he was held in custody by the said Charles Warner was a felony, committed in the presence and view of the said Charles Warner, and concerning which the said Elmer Fulton was attempting to escape; said arrest having been made by the said Charles Warner without process, but in connection with the commission of said felony by said Elmer Fulton for the possession of liquor in the Indian country."

An information charging the petitioner with the crime of murder has been filed by the county attorney, and a preliminary trial held before a justice of the peace of Ottawa county, Okl., and resulted in the petitioner, Warner, being held without bail to answer the charge of murder in the district court of Ottawa county, Okl. An application for a writ of habeas corpus was granted by this court on the 25th day of August, 1927, which was made returnable on the 29th day of August, 1927, when the same came on for hearing.

It is the contention of the petitioner, as presented by his counsel on this hearing, that the deceased, Fulton, had committed a felony in the presence of the petitioner, who was a federal officer charged with the duty of making arrests for such crimes and surrendering such persons to proper federal authorities for prosecution. The agreed statement of facts and the evidence introduced conclusively establish the fact that the deceased had committed a ·crime punishable by imprisonment in the federal penitentiary, and, after having been arrested by the petitioner for the commission of such an offense, attempted to escape and was in the act of fleeing at the time the petitioner fired the fatal shot.

Petitioner testified in his own behalf, and other evidence was presented corroborating his statements, that, after Fulton, deceased, had been placed under arrest by petitioner, he attempted an escape by fleeing, that Warner pursued his prisoner, and, while so running, fell to the ground, resulting in the accidental discharge of his revolver, which shot caused the death of Fulton.

It appears from the statement of facts introduced and from the evidence presented that the petitioner under the law should be discharged, whether the view taken of the evidence be that the officer deliberately shot at the deceased while he was fleeing and escaping from arrest, or that in the pursuit the

pistol was accidentally discharged, resulting in the death of the person arrested.

[1] The rule is well established that, if one committing a felony flees from an officer attempting his arrest, and will not stop, being commanded, the latter, to enforce compliance, may shoot him; but, if the offense is a misdemeanor, he has no right to take this extreme measure. Bishop's New C. R. Pro. § 159, par. 3. This rule prevails in Oklahoma. Sharp v. United States, 6 Okl. Cr. 350, 118 P. 675.

[2] It is uniformly held by the federal courts that, when the prisoner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States or of an order, process, or decree of a court or judge thereof, resort may be had to the writ of habeas corpus to release such person. In re Matthews (D. C.) 122 F. 248; Ex parte Royall, 117 U. S. 241, 6 S. Ct. 734, 29 L. Ed. 868; Thomas v. Loney, 134 U. S. 372, 10 S. Ct. 584, 33 L. Ed. 949; Cunningham v. Neagle, 135 U. S. 1, 10 S. Ct. 658, 34 L. Ed. 55; Ohio v. Thomas, 173 U. S. 284, 19 S. Ct. 453, 43 L. Ed. 699. In the case of In re Matthews, supra, Judge Cochran very thoroughly reviews the authorities, and in apt language announces the correct rule as to when the petitioner should be discharged. At page 259 appears the following:

"In the case of In re Fair (C. C.) 100 F. 149, two soldiers in the United States army were discharged by writ of habeas corpus from state custody on charge of murder for killing another soldier who had deserted, and whom they were attempting to arrest in order to prevent his escaping.

"In the case of United States v. Fuellhart (C. C.) 106 F. 911, two agents of the secret service division of the Treasury Department of the United States were discharged from state custody for assault and battery and malicious mischief upon writ of habeas corpus, because the charges against them were for acts done in searching the house of an alleged counterfeiter, and arresting and conveying him before a United States Commissioner.

"It is thus seen that in all the cases since the Royall Case, which is the leading case as to when it is proper for a federal court or judicial officer to discharge a state prisoner on writ of habeas corpus, the statement by Mr. Justice Harlan therein that it is proper for such discharge to be made when the prisoner is in custody for an act done in pursuance of federal law, because such a case is one of urgency, has been approved, and

in cases where that was the federal question involved it has been unhesitatingly followed. But in all of those cases, save one, the prisoner was an officer or other agent of the federal government. In one he was a governor of a soldiers' home, in three he was a deputy United States marshal, in one he was a deputy collector of internal revenue, in one he was a special examiner of the Pension Department, in one he was a soldier of the United States army, and in one he was an agent of the secret service division of the Treasury Department. The imprisonment of these agencies of the national government by the state authorities was for acts done in pursuance to federal law. The restraint of their liberties interfered with the operation of the national government. There can therefore be no room for question but that their discharge was proper. The federal courts will not permit a federal officer or agent to be restrained of his liberty by state authority for an act done in pursuance to federal law. The exceptional case referred to is that of Ex parte Conway [(C. C.) 48 F. 77] where the person imprisoned was not a federal officer or agent, but the foreman of a gang engaged in constructing a telegraph line along a public highway pursuant to federal authority. That was a case of urgency, because the construction of that line was a matter in which the national government and the public at large were highly interested, and the imprisonment of the persons engaged in constructing it put a stop to its construction until the matter could be disposed of in the course of the proceedings by virtue of which the imprisonment was had. On the other hand, we have found no case where a federal court or judicial officer has refused to discharge a person held in custody by state authority for an act done pursuant to federal law."

The county attorney has cited the case of United States ex rel. Drury v. Lewis, Warden of the Common Jail, 200 U. S. 1, 26 S. Ct. 229, 50 L. Ed. 343. In this case the court held that the Circuit Court of the United States for the Western District of Pennsylvania did not abuse its discretion in refusing to wrest the petitioner from the custody of the state officers in advance of a trial in the state court. The facts are that Drury and Dowd were indicted in the state court of Pennsylvania for murder; that Drury was a commissioned officer of the United States army and had under him, as one of his enlisted men, John Dowd, stationed at Alleghany Arsenal in the city of Pittsburgh. Copper downspouts and eave troughs had

been stripped from some of the buildings on the arsenal ground, and the officers had been directed to stop the depredations. Having received information that persons were stealing copper from one of the buildings on the arsenal grounds, one Crowley was detected by the officers, and, when he ran away from the arsenal property, was fired upon by Dowd, resulting in the death of Crowley. The evidence introduced was conflicting. Dowd contended that Crowley was fleeing at the time the shot was fired, but other witnesses testified that Crowley had stopped, turned around, and was facing the pursuing soldiers with his hands raised above his head, and that he said, "Don't shoot, I will come back." It is plain, from an examination of the evidence in this case, that there was a direct conflict in the testimony as to whether Crowley was fleeing from arrest at the time the fatal shot was fired. Chief Justice Fuller, in delivering the opinion of the court, said:

"But there was a conflict of evidence as to whether Crowley had or had not surrendered; and it is conceded that, if he had, it could not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the federal law; and the state court had jurisdiction."

The court held, if it was the petitioner's duty to pursue and arrest Crowley (assuming he had stolen pieces of copper), and, if the question of Crowley being a fleeing felon was open to dispute on the evidence, it was for the state court to pass upon it, and its doing so could not be collaterally attacked. It was held that, as there was a conflict in the evidence as to whether the deceased was fleeing at the time of the attempted arrest, the Circuit Court did not abuse its discretion in denying the writ.

[3, 4] The acts of Congress in relation to habeas corpus do not imperatively require the wresting of petitioner from the custody of state officers in advance of trial in the state court. But, in the case as presented under the agreed statement of facts, it is apparent that the shooting occurred by the petitioner while engaged in the performance of a duty imposed upon him by a law of the United States, and that, under the admitted facts, the deceased was shot while fleeing from arrest and in attempting to make his escape; that it was the duty of the petitioner under the law to apprehend and return the deceased and surrender him to proper authorities for prosecution. There being no dispute about these facts, the petitioner is entitled to be discharged.

The case presented is extremely unfortunate. It has come about because of the existence of criminality. The deceased was apprehended for violation of laws enacted by Congress, and evidently appreciated the graveness of his situation sufficiently to induce him to attempt an escape. So long as people engage in criminality, these unfortunate cases will come to the attention of the courts. Officers should be extremely loath in the taking of human lives, as well as should all citizens. Human life should be taken only when it is necessary for an officer to protect his own body, or to execute the processes of the law in which he has a duty to use such force as is reasonably necessary for the performance of his duty. Officers should not be discouraged in the performance of their duties, but they should be extremely cautious in the performance of their duties, so that the taking of human lives should never be necessary.

The petitioner will be discharged.