## STINNETT v. COMMONWEALTH OF VIRGINIA.

### No. 3212.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

John Paul, U. S. Atty., of Harrisonburg, Va., and C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va.

Edward Meeks, of Amherst, Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a criminal prosecution instituted by the commonwealth of Vir-

ginia against one Talley Stinnett, a person employed by and acting under the authority of the United States in the enforcement of the National Prohibition Act (27 USCA). Stinnett, hereafter referred to as the defendant, was indicted in the circuit court of Amherst county, Va., charged with the murder of one Ernest Grant; and the case was removed for trial into the District Court of the United States for the Western District of Virginia, pursuant to section 33 of the Judicial Code (28 USCA § 76). The jury found defendant guilty of involuntary manslaughter; and, from a sentence of two years and six months in the penitentiary of Virginia, he has appealed to this court.

At the time of the killing of Grant, defendant had gone with one De Bord, a special employee of the United States, and one Smith, a state prohibition inspector, to an illicit distillery on the side of Snowden Mountain in Amherst county. There they discovered a number of barrels containing some 1,800 gallons of beer or mash, fermented and ready for distillation. Nearby was a place prepared for a furnace, and a little farther away a copper still. The officers hid themselves in the woods and awaited developments. After a while, according to their testimony, the deceased and a negro came up to the barrels, and deceased removed the covers from a number of them, and examined the beer as though testing it. He and the negro then became frightened and ran, and Smith followed them. Smith was wearing the uniform of a Virginia officer. As he was about to overtake deceased, the latter turned, and, drawing a pistol, pointed it at him and threatened to kill him if he came farther. Smith thereupon called for help, and defendant came with a rifle to his assistance. Defendant ordered deceased to drop the pistol, and, upon his refusal to do so, fired twice in rapid succession, the second shot striking deceased and causing his death. Defendant testified that he fired the second shot at deceased's legs, not intending to kill him; and it is a reasonable inference that this is true, as the bullet struck deceased in the hip and caused death by reason of its being deflected.

The foregoing is the version of the killing given by the officers. The prosecution, however, introduced the negro who was with the deceased and who testified that he and the deceased ran when the officers came up, and that the officers ordered them to stop and began shooting when they continued running. The prosecution also introduced several witnesses who testified that, shortly after the

occurrence, defendant admitted shooting deceased as he was running away following the encounter with Smith. According to one of these witnesses, defendant stated that he ordered deceased to drop the pistol which he had drawn on Smith and shot behind him, that deceased then ran, and he (defendant) shot again. Another witness testified that defendant stated to him that deceased had backed Smith out and that he (defendant) came up and shot deceased as he was running away. The verdict, which found defendant guilty of involuntary manslaughter only, indicates that the jury did not consider that defendant acted wantonly or maliciously, but at the most that he acted negligently or used excessive force. It becomes very important, therefore, to determine whether the jury were properly instructed as to the force which defendant might rightfully use in making the arrest which he had undertaken.

On this point, it appears that the court instructed the jury that they should acquit the defendant if they found that, when he shot deceased, the latter was pointing his pistol at Smith, but should convict him if he shot while deceased was running away and no longer threatening Smith. In this we think there was error. The defendant was engaged with other officers in attempting to arrest the deceased, who, if their testimony is to be believed, had been guilty of the commission of at least three felonies in their presence, and who had used a deadly weapon in resisting arrest. In such case, the rule applicable is not the rule as to the force which an officer may use in defending himself or another officer, but the rule as to the force which may lawfully be used to effect the arrest of one guilty of a felony. That rule is that the officer has the right to use such force as under the circumstances appears reasonably necessary to effect the arrest or prevent the escape of the felon, and that, if the reasonable use of such force results in the death of the felon, the officer is not to be held criminally accountable therefor. Of course, the jury and not the officer is to be the judge of the force reasonably necessary under the circumstances, and this final supervision should serve as a salutary restraint upon the use of undue violence on the part of the officers of the law; but it should be remembered that the jury is to judge of the necessity, in the light of the circumstances as they reasonably appear to the officer at the time.

Contention is made that the deceased was not guilty of felony; but, if the evidence

of the defense is accepted, there is no ground for such contention. In the first place, the unlawful manufacture of intoxicating liquor is a felony under both the federal law and the law of Virginia. Act of March 2, 1929, c. 473, § 1, 45 Stat. 1446 (27 USCA § 91); Virginia Code, § 4675 (5). And there was evidence here from which the jury would have been justified in concluding that deceased was guilty of this felony. He was not only at a place prepared for operating a distillery where 1,800 gallons of beer had been prepared and was ready for distillation, but he was seen by the officers to test the beer as if to ascertain whether it was ready. And the fact that he was armed, that he ran, and that he resisted the officers when overtaken, were all circumstances tending to show that he was implicated in the unlawful manufacture. The fact that the beer had not been distilled at the time does not negative the existence of the crime. It is a matter of common knowledge that such beer is intoxicating and is frequently used as a beverage, and manufacturing it would in itself be a violation of the statute. But, in addition to this, the evidence relied upon by the defense justified the inference that the deceased was connected with the unlawful manufacturing of liquor of which the fermentation of the beer was merely one of the processes. The law reaches every part of the process of manufacture; and the mere fact that men who engage in manufacturing in violation of law do not complete the process does not absolve them from guilt. Danovitz v. U. S., 281 U. S. 389, 396, 397, 50 S. Ct. 344, 345, 74 L. Ed. 923; United States v. G. Wilkenfeld & Co. (D. C.) 46 F.(2d) 462, affirmed (C. C. A. 2d) 46 F. (2d) 464.

In the Danovitz Case, supra, the argument was made that the manufacture of intoxicating liquor was completed with its production, that the placing of it in barrels was not a part of the manufacture, and that consequently such barrels could not be confiscated as property designed for manufacture. The argument was rejected; the court, through Mr. Justice Holmes, saying: "The argument for the petitioner cannot be helped by amplification. It is obviously correct if the word 'manufacture' be taken in the strictest and most exact sense. But the word may be used in a looser way to express the whole process by which an article is made ready for sale on the open market. P. Lorrilard Co. v. Ross, 183 Ky. 217, 223, 209 S. W. 39. As the purpose of the Prohibition Act was to 'suppress the entire traffic' condemned by the act, United States v. Katz, 271 U. S. 354, 357, 46 S. Ct. 513, 70 L. Ed. 986; Donnelley v. United States, 276 U. S. 505, 513, 48 S. Ct. 400, 72 L. Ed. 676, it should be liberally construed to the end of this suppression, and so directs. Title 2, § 3, of the Act, Code, title 27, § 12 (27 USCA § 12)."

In addition to this, the deceased was guilty of felony under section 4675 (9) of the Virginia Code in having a pistol on his person while engaged in manufacturing intoxicating liquor. And he was guilty of felony under 18 USCA § 121, also, in using a deadly weapon in resisting an officer of the United States authorized to make searches and seizures. There can be no question but that the defendant comes within the protection of that statute. 27 USCA § 45. And it is not necessary to render a person guilty of felony thereunder that the officer resisted be at the time engaged in a search or seizure, but merely that he be engaged in the performance of his duties under the law. Wheeler v. U. S. (C. C. A. 5th) 293 F. 588. But, of course, the officers here were as a matter of fact engaged in the seizure of the beer and the paraphernalia used in the distilling of liquor as well as in the attempted arrest of the deceased; and it would be indeed a narrow construction of the statute which would give them the protection of its provisions only while they were actually engaged in making a search or in the act of taking manual possession of contraband property.

As the deceased, according to the testimony of the defense, had unquestionably committed a felony in the presence of the officers, they had the right to arrest him and to use such force as under the circumstances appeared reasonably necessary to effect his arrest or to prevent his escape. And it is a well-settled rule of law that, if the reasonable use of such force results in the death of the felon, the officers may not be held liable therefor. 1 East, 298; Foster's Crown Law, 271; 1 Hale P. C. 489; Ex parte Warner (D. C.) 21 F.(2d) 542; State v. Garrett, 60 N. C. 144, 84 Am. Dec. 359; State v. Roane, 13 N. C. (2 Dev.) 58; State v. Evans, 161 Mo. 95, 61 S. W. 590, 84 Am. St. Rep. 669; 2 R. C. L. 471; 13 R. C. L. 876; note, 17 Ann. Cas. 900. It has been suggested that the law should be changed so as to justify killing to effect an arrest or to prevent an escape only in the case of felonies punishable by death or of the highest order of criminality, such as treason, murder, robbery, burglary, rape, etc.; and the Ameri-

can Law Institute at its meeting in 1931 considered a model statute having this end in view, which was quite fully debated. Proceedings of American Law Institute, vol. 9, p. 179 et seq. It is clear, however, that, as the rule of the common law has not been changed by statute in Virginia, this defendant is entitled to its protection, and that courts may not change the rule, because they may not agree with it, and thus make defendant guilty of a crime because of an act which was no crime when committed. State v. Bell, 136 N. C. 674, 49 S. E. 163.

This does not mean that, where the common-law rule is applicable, officers of the law may shoot persons guilty of felony merely because they attempt to run. An officer may use force likely to result in death only in case it appears reasonably necessary to do so to effect an arrest or prevent an escape. As said by the Supreme Court of Arkansas in Green v. State, 91 Ark. 510, 121 S. W. 727, 728: "A felon's flight does not justify his pursuer in killing him, unless that is necessary to prevent escape. Reasonable care should be exercised by one placed in such a situation, either as an officer or a private citizen, to prevent the escape of a felon without doing personal violence; and it is only where killing is necessary to prevent the escape of the felon that the slayer is held in law to be justified." On the other hand, if the use of force resulting in death is necessary to effect an arrest or prevent an escape, the officer is not to be held guilty merely because the felon was fleeing instead of resisting or assaulting the officer at the time.

In the case at bar, it was the duty of the officers to arrest the deceased. This they attempted to do peaceably, according to their version of the matter, but deceased resisted them, and by the use of a deadly weapon prevented their effecting the arrest. According to the contention of the prosecution, he then started away. What were the officers to do in such a situation? It was a reasonable conclusion that further pursuit would meet with further resistance. Was it incumbent on them to remain passive and allow a man who had committed a felony in their presence to run away and escape the consequences of his crime? The jury might have concluded, even if they believed that deceased was running away at the time, that the defendant in shooting did not intend to kill him but to effect his arrest, and that such action did not constitute the use of excessive force under the circumstances. He was entitled under the evidence to have them consider this aspect of

the case; and he was denied this right by the portion of the charge of which complaint is made.

We agree with the learned judge below that officers engaged in the enforcement of the law should not take human life except in cases where it is absolutely necessary for the protection of themselves or the performance of their duties under the law. On the other hand, the courts should not lay down rules which will make it so dangerous for officers to perform their duties that they will shrink and hesitate from action which the proper protection of society demands. The fact that some officers have overstepped their authority and that instances have occurred where officers have needlessly taken human life is no reason why the courts should deny to all officers the protection of the rules which experience has shown to be essential to the proper performance of their duties. When the state sends an officer forth to arrest a felon, she says to him to make the arrest peaceably if he can, forcibly if he must. If in making the arrest he uses force, he should not be treated as a criminal, if he uses only such force as is reasonably necessary under the circumstances.

Some confusion in thinking results when the right of the officer to use force in making an arrest is considered exclusively with reference to the enforcement of the prohibition laws. The courts must lay down general rules applicable to the enforcement of all laws; and the unsoundness of a rule which would deny to officers of the law the right to use force in the arrest of fleeing felons is readily apparent when considered with relation to other felonies. It would never occur to any one that an officer should be prosecuted for murder because his use of force in attempting an arrest has resulted in the death of a fleeing bank robber. Opposition to the prohibition laws leads some persons to look upon these laws as in a class to themselves; but the courts must enforce the law as it is laid down by the lawmaking power. When Congress declares that certain crimes shall be punished as felony, the courts must deal with them as such; and, when officers of the law go forth to arrest persons guilty of such crimes, they are dealing with persons who under the law are felons. Not only is this true, but experience and the records of the courts have shown that illicit distillers and rum runners when armed constitute a very dangerous class of criminals; and there is no warrant in law, or in reason, in denying to the officers who attempt to arrest them the

protection which the law throws around other officers attemping to arrest criminals guilty of other felonies.

We shall consider one other point raised by the exceptions, as it will arise in the retrial of the case. That point relates to the action of the judge in sentencing defendant without first having the jury pass upon the question of punishment, as required by the Virginia statutes. It must be borne in mind that, as this is a criminal prosecution under the laws of Virginia, the law of that state is followed, and that no punishment can be imposed upon defendant except such as the state law authorizes. Tennessee v. Davis, 100 U. S. 257, 271, 25 L. Ed. 648. While the courts of the United States will not follow a state practice, even where it is prescribed by statute, which conflicts with the right of a party to the exercise of the judicial power as vested in judges of the United States courts (Herron v. Sou. Pac. Ry. Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857), they must, in inflicting punishment under the statutes of a state, follow the provisions of those statutes limiting punishment. The fixing of punishment under the federal criminal statutes is a matter for the judge alone; but there is no constitutional reason why the states may not provide other methods of handling the difficult matter of punishment under state laws. When they do so, and a prosecution under the state law is removed into a federal court, there is no basis upon which the federal court may ignore the provisions of the state law with regard thereto.

The fixing of punishment for crime is not a matter of procedure but a matter affecting the substantive rights of the accused. State of Virginia v. Felts (C. C.) 133 F. 85, 92; People v. Hall, 199 Cal. 451, 249 P. 859; Commonwealth v. Scott, 5 Grat. (46 Va.) 697; Jones v. Com., 20 Grat. (Va.) 848. No punishment can be inflicted upon him in a case such as this except such as the state law authorizes; and, in the case at bar, not only does a general statute of the state provide that, in all criminal cases tried by a jury, the punishment shall be ascertained by the jury trying the case, but the statute defining the punishment for the very crime of which the defendant here was convicted, in-

voluntary manslaughter, provides that same may be punished by imprisonment in the penitentiary of from one to five years but, in the discretion of the jury, by a fine not exceeding $1,000 or confinement in jail not exceeding one year. In other words, the statute under which defendant was punished provides that his sentence might have been limited by the jury to a fine or to a sentence not exceeding one year in jail. Without the matter of punishment having been submitted to the jury's discretion, defendant was given a sentence of two and one-half years in the penitentiary. Can it reasonably be said that he was not denied a substantive right given him by the very statute under which he was punished? In a number of states there are statutes providing for capital punishment upon a conviction of murder, but for life imprisonment instead of capital punishment, if the jury so recommends. Can it be that in these states, when a prosecution for murder is removed into the federal courts, the courts may ignore such statutes and proceed to inflict the death penalty without submitting to the jury the matter affecting punishment as the statute directs? We do not think so. If the court does not follow the provisions of the state law with respect to fixing the punishment imposed, it cannot be said to be punishing according to the state law, which is its only authority for imposing any punishment at all.

It should be said, in justice to the learned judge below, that no question was raised before him as to the necessity under the Virginia statutes of submitting the question of punishment to the jury; and an interesting question arises as to whether or not the defendant did not waive the right to have the jury fix the sentence by allowing the court, without objection, to fix same. We need not pass upon this question, however, as we are granting a new trial upon another ground, and the question will probably not arise again.

For the error in the charge to which we have referred, the judgment and sentence of the court below will be set aside, and a new trial will be granted.

Reversed.