**Rhinelda M. BELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 13684.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 19, 1957.

Decided Jan. 23, 1958.

Petition for Rehearing Denied March 4, 1958.

Mr. Thomas E. Harris, Washington, D. C. (appointed by this Court), for appellant.

Mr. Harry T. Alexander, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Messrs. Lewis Carroll and Carl W. Belcher, Asst. U. S. Attys., were on the brief, for appellee. Mr. Arthur J. McLaughlin, Asst. U. S. Atty., also entered an appearance for appellee.

Before PRETTYMAN, BAZELON and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant was indicted, tried and convicted for housebreaking and larceny. He claims an unreasonable search and seizure.

At about three-thirty o'clock one morning two police officers in a scout car saw appellant and another man in an automobile pull away from the curb in front of a food store and drive some two blocks without lights. The officers stopped them and asked to see the driver's license and registration card. The inquiring officer used his flashlight and, while asking questions about the documents, flicked the light about the rear of the car. On the back seat were some forty cartons of cigarettes. The officer asked about them. Appellant's companion made a motion to reach under the seat, whereupon the officer ordered both men out of the car.

Up to this point the members of the court are in agreement. A police officer certainly has a right to stop a car driving without lights at three-thirty o'clock in the morning, and he certainly has a right

to use his flashlight to examine the driver's credentials. When he approaches the driver's side of the car he has a right to flash his light about the back seat, for his own self-protection if for no other reason. Argument is presented on whether the flashing of the light was or was not an unreasonable search. We need not consider that question; if it was a search it was reasonable under the circumstances. When the officer inquired about where they got the cigarettes the answer was less than satisfactory—"at a place in Maryland."

After ordering the two men out of the car the officer placed them under arrest. At this point our disagreement begins.

The Supreme Court held in Mallory[1] that a police officer can arrest without a warrant for a felony if he has probable cause. What is probable cause, and did this officer have it?

In Carroll v. United States[2] the Supreme Court said, quoting the Supreme Court of Pennsylvania: "The substance of all the definitions [of probable cause] is a reasonable ground for belief in guilt." The Court repeated that quotation in Brinegar.[3] In Husty v. United States[4] Mr. Justice Stone wrote for the Court:

"To show probable cause it is not necessary that the arresting officer should have had before him legal evidence of the suspected illegal act. Dumbra v. United States, 268 U.S. 435, 441 [45 S.Ct. 546, 69 L.Ed. 1032]; Carroll v. United States, supra. It is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched. See Dumbra v. United States, supra;

Stacey v. Emery, 97 U.S. 642, 645 [24 L.Ed. 1035]."

Mr. Justice Rutledge wrote in Brinegar: [5]

"However, if those standards [for determination of guilt] were to be made applicable in determining probable cause for an arrest or for search and seizure, more especially in cases such as this involving moving vehicles used in the commission of crime, few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end. Those standards have seldom been so applied.

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa.St. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at [page] 161 [45 S.Ct. at page 288, 69 L.Ed. 543]. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reason-

1. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

2. 267 U.S. 132, 161, 45 S.Ct. 280, 69 L. Ed. 543 (1925).

3. Infra note 5.

4. 282 U.S. 694, 700–701, 51 S.Ct. 240, 75 L.Ed. 629 (1931).

5. Brinegar v. United States, 338 U.S. 160, 174–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

ably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543].

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officer's whims or caprice."

The Supreme Court in Mallory, supra, said "The police may not arrest upon *mere* suspicion".[6] (Emphasis ours.) But suspicion on reasonable grounds is not mere suspicion. The opinions by Mr. Justice Stone and Mr. Justice Rutledge, to which we have referred, make this amply clear. And the United States Code also makes the difference clear. Section 2236 of Title 18 [7] provides that an officer searching a dwelling without a warrant is guilty of a misdemeanor, but it provides that the section shall not apply to an officer arresting a person "suspected

on reasonable grounds of having committed a felony". And agents of the Federal Bureau of Investigation are authorized by statute [8] to make arrests without warrant for a felony "if they have reasonable grounds to believe that the person to be arrested has committed" the felony.

■■■ Reasonable grounds are determined by the circumstances. "[F]actual and practical considerations of everyday life", "facts and circumstances", "acting on facts", "the apparent facts", "in the circumstances" are some of the expressions used by the Court in the opinions from which we have quoted. The pertinent circumstances are those of the moment, the actual ones.[9] Officers patrolling the streets at night do not prearrange the setting. They do not schedule their steps in the calm of an office. Things just happen. They are required as a matter of duty to act as reasonably prudent men would act under the circumstances as those circumstances happen. Even the ultimate power of an officer in the case of a felony, the justification for killing an offender, depends on the circumstances of the moment. As Judge Parker wrote for the Fourth Circuit,[10] the rule is that an officer has the right to use such force "as under the circumstances appears reasonably necessary" to effect the arrest, and, as he said, the jury must judge of the necessity "in the light of the circumstances as they reasonably appear to the officer at the time."

Among the other pertinent circumstances is the qualification and function of the person making the arrest. The standard is a reasonable, cautious and prudent man. But the question is whether the person making the arrest had probable cause. Probable cause is not a philosophical concept existing in a vacuum; it is a practical and factual matter.

6. 354 U.S. at page 454, 77 S.Ct. at page 1359.

7. 62 Stat. 803 (1948).

8. 64 Stat. 1239 (1951), 18 U.S.C. § 3052.

9. United States v. Di Re, 332 U.S. 581, 592, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

See also Trupiano v. United States, 334 U.S. 699, 708, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); Poldo v. United States, 55 F.2d 866 (9th Cir., 1932).

10. Stinnett v. Commonwealth of Virginia, 55 F.2d 644, 645 (1932).

A fact which spells reasonable cause to a doctor may make no impression on a carpenter, and vice versa. Did the person who made the arrest, if a reasonable and prudent man, have probable cause? [11] An officer experienced in the narcotics traffic may find probable cause in the smell of drugs and the appearance of paraphernalia which to the lay eye is without significance. His action is not measured by what might be probable cause to an untrained civilian passerby. When a peace officer makes the arrest the standard means a reasonable, cautious and prudent peace officer. The question is what constituted probable cause in the eyes of a reasonable, cautious and prudent peace officer under the circumstances of the moment.

The problem faced by the officer is one of probabilities—not certainties and not necessarily eventual truth.[12] As we have quoted Mr. Justice Rutledge, "In dealing with probable cause, however, as the very name implies, we deal with probabilities." And the Justice went on to write that room must be allowed for some mistakes, so long as the mistakes are "those of reasonable men, acting on facts leading sensibly to their conclusions of probability."

At the trial in the case at bar, in answer to the question, "And for what offense were they being arrested at that time?", the officer testified, "Investigation of housebreaking." Of course there is no such crime as "Investigation". But this description given by the officer does not go to the question of probable cause. The question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a felony had been committed and that the men in the car had committed it. The situation was a sudden, unanticipated development. Suppose the officer had arrested these men upon belief that they had committed a housebreaking, but the legal lights in charge of preparing indictments had decided the offense was robbery; or suppose later information had disclosed a murder. Would the arrest have been invalid? Of course not. So to hold would make a mockery of the Supreme Court's admonition to us that probable cause is a matter of practicalities, not of technicalities.

Reference can properly be made to two exhaustive articles upon the subject before us. Professor Wilgus, in his Arrest Without A Warrant, published in 1924,[13] developed the history of the rule. He quoted Halsbury's Laws of England [14] as follows: "A peace officer may arrest on suspicion of felony whether a felony has or has not been committed." He quoted Blackburn, J., in Hadley v. Perks [15] as follows:

"If a felony were actually committed a person might be arrested without a warrant by any one, if he were reasonably suspected of having committed the felony; and a constable could go further if he had reasonable ground for supposing a certain person committed the supposed felony, he might arrest him though no felony had actually been committed." [16]

Professor Wilgus adds: "These cases have settled the rule as to officers, and there seems to be no dissent; they are referred to or quoted in nearly all the innumerable cases that have followed." The rule is bottomed on "reasonable ground". Professor Foote in a recent article, Safeguards in the Law of Ar–

---

11. In Brinegar, for example, the Supreme Court recited as material the facts that the arresting officer knew the subject as a bootlegger and observed that the automobile was low on its axles. See also Carroll v. United States, supra; United States v. Sebo, 101 F.2d 889, 890 (7th Cir., 1939); Kwong How v. United States, 71 F.2d 71, 73–74 (9th Cir., 1934).

12. Brinegar v. United States, supra.

13. 22 Mich.L.Rev. 541, 673, 798.

14. Id. at 686.

15. [1866] 1 Q.B. 444, 456.

16. Supra note 13, at 689.

rest,[17] stresses opposition to proposals, notably in the Uniform Arrest Act, "which would extend an officer's power to detain suspects beyond limits now imposed by the requirement that an arrest be grounded in probable cause."[18] Professor Foote says: "What is essential is that the officer's suspicion be sufficiently reasonable to amount to probable cause." The thrust of his thesis is the maintenance of the standard of probable cause. His opposition is to arrest upon bare suspicion, less than reasonable grounds. The firm premise of his careful and vigorous thesis is the validity of reasonable grounds as the guiding rule.

The sum total of the reams that have been written on the subject is that a peace officer may arrest without a warrant when he has reasonable grounds, in light of the circumstances of the moment as viewed through his eyes, for belief that a felony has been committed and that the person before him committed it. We require police officers to be reasonable; we too must be reasonable.

We examine the circumstances under which this officer acted. The two men were in an automobile. The Supreme Court pointed out in Carroll and Brinegar, supra, the significance of that fact in an appraisal of an officer's action. A moving vehicle presents a problem different from that presented where a house is involved. It was about three o'clock in the morning. Nighttime presents problems different from those of daytime. The car had pulled away from in front of a store; the men had not been parked in a residential district. The car was running without lights. There were forty cartons of cigarettes on the back seat. The only explanation offered as to the source of the cigarettes was "a place in Maryland", surely an unconvincing reply to a question by an officer. An automobile driven without lights in the middle of the night and with forty cartons of cigarettes (8,000 cigarettes) in the back seat calls for investigation and for rea-

sonable explanation. One of the men reached as though for a weapon.

Perhaps no one of these circumstances, taken separately, would spell probable cause. We do not say it would. The officer was faced with a combination of circumstances. We must treat the situation as he faced it. We think that under these circumstances a police officer had reasonable grounds for belief that a felony had been committed and that these men had committed it. He had probable cause for arrest. The trial court concluded, "This is a very clear case of excellent police work and lawful arrest on suspicion of housebreaking." We agree.

What else should the officer have done? He was on duty patrolling the streets in a commercial area for the very purpose of preventing—or of apprehending a person who might have done—inter alia, the thing which apparently had been done. The circumstances required inquiry at least. Some satisfactory explanation should have been forthcoming. None was. An apparently threatening gesture was made. What should the patrolman have done? Forthwith gesture these men on? Or detain them for further inquiry—for investigation of the obviously reasonable suspicion? Clearly his duty required the latter.

The arrest was legal. A subsequent search revealed various and sundry articles and money which were shown to have been stolen. The admission in evidence of these items is the problem in the case. The search was incidental to the valid arrest and so was legal.

Affirmed.

BAZELON, Circuit Judge (dissenting).

I agree with my brothers that the police officer acted reasonably in (1) stopping the car in which appellant and his companion were riding without lights at 3:30 A.M., (2) flashing his light about the back seat, and (3) ordering both men out of the car when one of the occupants made a gesture reaching under the seat.[1]

---

17. 52 Nw.U.L.Rev. 16 (1957).

18. Id. at 18.

1. The search revealed no weapons.

At that point, the officer could properly have arrested both men for driving without lights. It may even be, although I do not decide, that an arrest would have been proper upon other charges. But the arrest here was rested on a charge of "suspicion of housebreaking." There is no such crime. Hence the arrest is illegal. And it is illegal even if we read the charge as one for the crime of housebreaking. The officer, as his statement of the charge indicates, had only "suspicion" because no housebreaking had occurred in his presence and he was not even aware that one had occurred outside his presence. Probable cause and not mere suspicion is essential for a valid arrest.

Since the search was not incident to a valid arrest, the evidence seized is barred. I therefore dissent from the court's decision approving the admission of such evidence.