Jasen, J. (dissenting).
The police detective with over four years’ experience in narcotics investigation testified that every narcotics arrest he had previously made, except for cigarettes, involved narcotics “in this type of Manila envelope.” This testimony stands uncontradicted in the record and is not incredible as a matter of law. It is certainly not unusual for a person of ordinary eyesight to observe manila envelopes at a distance of perhaps 20 feet even if they are the size of pay envelopes as described by appellants ’ counsel on oral argument.
We do not attach much significance to the fact that the envelopes have by now been lost, nor is it a good ground for reversal. Neither is the description of the envelopes by appellants’ counsel on oral argument a basis for reversal. We must look to what the record states. It describes the envelopes sufficiently to support the police testimony that this is a common way to transfer drugs. Appellants’ counsel was confronted with the envelopes at the suppression hearing and had the opportunity to examine the detectives with regard to the appearance of the envelopes.
The objective conduct observed by the detectives constituted probable cause. Here, the detectives observed a car stop on a city street late on a winter’s evening. One man leaves the car and returns with four sealed envelopes of the type in which narcotics are passed. He hands the envelopes to the driver, who in turn gives them to a rear seat passenger who apparently *315 places them on the floor. The car then attempts to drive away leaving one passenger behind.
It seems a reasonable inference to experienced narcotics investigators that here, indeed,.is a narcotics “ drop.” It is possible that the appellants were handing out pay envelopes at night, car to car, but it is very unlikely. One detective had previously made narcotics arrests at Kings Highway and East 16th Street, a block or two away. All that was needed was a reasonable ground to believe that narcotics were being transferred.
There are few absolutes in the area of the law dealing with probable cause for arrest. We have emphasized from time to time that probable cause is not to be evaluated from the remote vantage point of a library but, rather, from the viewpoint of a prudent and cautious police officer on the scene at the time of the arrest. (People v. Valentine, 17 N Y 2d 128; People v. Brady, 16 N Y 2d 186; cf. People v. Hook, 15 N Y 2d 776; cf. Bell v. United States, 254 F. 2d 82 [D. C. Cir., 1958], cert. den. 358 U. S. 885.) The issue is whether such a police officer in the particular circumstances presented by the record in this case, conditioned by his observations and information, and guided by the whole of his police experience could reasonably have believed that a crime had been committed by appellants.
It is possible that appellants’ acts would appear innocuous to a person untrained in the ways of the criminal. However, it was certainly reasonable for the arresting officers who were experienced in the pattern of criminal behavior which they were observing to deduce that a crime was being committed in their presence. (Code Crim. Pro., § 177, subd. 1; People v. Valentine, supra.)
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Fuld and Judges Burke and Brbitel concur with Judge Keating ; Judge Jasen dissents and votes to affirm in an opinion in which Judges Scileppi and Bergan concur.
Judgment reversed, etc.