Alex Junior **PETERKIN**, Appellant,

v.

**UNITED STATES**, Appellee.

Lester **PERKINS, Jr.**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 5610, 5615.

District of Columbia Court of Appeals.

Argued June 29, 1971.

Decided Oct. 6, 1971.

William W. Kramer, Washington, D. C., appointed by this court, for Alex Junior Peterkin.

Joseph ,C. Lynch, Washington, D. C., appointed by this court, for Lester Perkins.

Julius A. Johnson, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry, James B. McMahon and Richard L. Cys, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and NE-BEKER and YEAGLEY, Associate Judges.

HOOD, Chief Judge:

Appellants were convicted of possession of desoxyn tablets in violation of D.C.Code 1967, § 33–702(a) (4).[1] On this appeal admission of the drug into evidence is challenged as the fruit of an unlawful search. It is contended that the police lacked probable cause to arrest appellants thereby rendering the incident search unlawful and that, short of probable cause, there was no justification under the rationale of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968) to conduct a protective search for weapons. Careful consideration has led us to the conclusion that the officers had probable cause to arrest appellants, and we find it unnecessary to reach the latter contention.

One afternoon while cruising in a marked car in the area of the 2800 block of 14th Street, N.W., two uniformed officers observed, from 10 feet away, appellant Peterkin giving "something" out of a vial to appellant Perkins in exchange for an amount of cash, consisting of "[t]wo or

1. Desoxyn is a stimulant, sometimes used as a "booster" with heroin, composed of methamphetamine hydrochloride proscribed by the Dangerous Drug Act for the District of Columbia. D.C.Code 1967, § 33–701 et seq.

more singles". Peterkin then placed the vial in his left coat pocket. Appellants were not known as narcotics users nor under prior suspicion in connection with dangerous drugs. Nevertheless, being in a "high narcotic area" and having assisted in numerous narcotics arrests, Officer Busker concluded that "some sort of narcotic transaction [was] going on * * * [b]ecause [he] had seen narcotics in the past transported * * * in clear plastic vials."

The officers approached the suspects and Officer Christiansen asked Peterkin for some identification. Complying with the officer's request Peterkin reached into his left coat pocket at which point the vial in his pocket became visible to the officer. Instantaneously reaching into the same pocket, Christiansen seized the vial containing 22 tablets of the drug in question. Officer Busker then arrested and searched Perkins, finding two yellow desoxyn tablets.

We have said that the test for judging the existence of probable cause is whether "a reasonably prudent police officer, considering the total circumstances confronting him and drawing from his experience," would be warranted in the belief that an offense has been or is being committed. Lucas v. United States, D.C.App., 256 A.2d 574, 575 (1969), citing Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82 (1958), cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). The analysis must be guided by practical rather than technical considerations keeping in mind the necessities of the moment and the reasonableness of the officers' actions. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Bell

v. United States, *supra*, 102 U.S.App.D.C. at 386, 254 F.2d at 85.

Appellants would require something more than the conduct witnessed in order to justify an arrest. They seem to view the behavior in question as innocent conduct or at the most as presenting a challenging situation at which the police could have taken a closer look.[2] It is asserted that "many respectable people need look no further than their medicine chests to find a potpourri of pills in unmarked bottles and vials, transferred from the original containers for one innocuous purpose or another." While it is true that plastic vials, containing a variety of pills, are commonly carried on one's person for purposes of medication and occasionally the contents are transferred from one to another, appellants' statement minimizes the full import of the situation as it appeared to officers trained in the apprehension of narcotics violators.

The officers observed a transfer from a vial approximately "two inches in length and * * * three-quarters of an inch in diameter." At least $2 was passed in return. The neighborhood was one frequented by narcotics users. Appellants "stepped back" and Peterkin placed the vial and the money in his pocket as the officers approached. Officer Busker testified that, from his prior experience, he believed that $2 or $3 was the normal rate for two desoxyn tablets and almost the price of a cap of heroin. The exchange on the street of "something" from a vial, logically presumed to be pills,[3] is an unusual transaction. The fact that *cash* was passed lends greater suspicion to the event in view of the costly price of prohibited drugs. All this, coupled with the character of the neighborhood,[4] gave rise to reasonable

2. *See* Washington v. United States, 130 U.S.App.D.C. 144, 397 F.2d 705 (1968); Dorsey v. United States, 125 U.S.App.D.C. 355, 372 F.2d 928 (1967).

3. When pressed on cross-examination at the trial Officer Busker said he could tell that the vial contained pills and he could discern their color.

4. While an area which is the site of frequent narcotics traffic cannot transform essentially innocent circumstances into unlawful conduct, we would be ignoring reality if the character of the neighborhood did not play some part in the total assessment of probable cause.

probability that an illegal narcotics transaction had been conducted.[5] As with all borderline situations regarding probable cause, innocent explanations for the activity may be imagined. But the mere possibility of other interpretations would not suffice to diminish the reasonable likelihood of illegality appearing, from the circumstances, to prudent men possessing the knowledge and experience of the officers in the case at bar. Accordingly, the judgment below is

Affirmed.

5. "The problem faced by the officer is one of probabilities—not certainties and not necessarily eventual truth." Bell v. United States, 102 U.S.App.D.C. 383, 387,

254 F.2d 82, 86 (1958), cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).