**Willie George MUNN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5704.**

District of Columbia Court of Appeals.

Argued July 27, 1971.

Decided Nov. 1, 1971.

Sol Rosen, Washington, D. C., appointed by this court, for appellant.

John E. Drury, III, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Eric B. Marcy, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and GALLAGHER and PAIR, Associate Judges.

PAIR, Associate Judge:

Tried without a jury, appellant was convicted of possession of heroin in violation of the Uniform Narcotics Act.[1] At trial, appellant moved to suppress as evidence tinfoil packets containing heroin, urging that they were the fruit of a search incident to an arrest made without probable cause. The denial of that motion is the crucial question on appeal.[2]

The arresting officer testified that on November 13, 1970 at approximately 6:45 p.m., he was seated on the passenger side of a police cruiser which had stopped for a red light at the southeast corner of 14th and Chapin Streets, N. W., in an area of the city known for its high rate of narcotics traffic. He observed, from a distance of about 25 feet, appellant and another man on the northwest corner of the intersection. Neither appellant nor the other man was, at that time, known to the officer who had no information concerning them.

The officer testified further that as the cruiser started across the intersection he saw appellant's companion reach into his pocket and remove a number of flat "tinfoil packs," each approximately one inch by one-half inch in size, and that he appeared to be "counting or examining" them. At this point the driver of the cruiser turned left onto Chapin Street and, as the cruiser was turning, appellant was observed to receive the "tinfoil packs" from his companion. The cruiser was then stopped at the curb in front of the two

---

1. D.C.Code 1967, § 33–402.

2. For reasons given by appellant's counsel, the trial judge permitted the motion to suppress to be raised during the trial though no such pretrial motion had been made. It was appellant's only defense at trial.

men, the car door was opened and, when appellant saw the officers about six feet away, he closed the hand containing the tinfoil packets, put it in his pants' pocket, and stood there. Appellant was then arrested, searched, and the tinfoil packets, later found to contain heroin, were seized. The officer testified also that, throughout his experience on the narcotics squad,[3] he had seen tinfoil packets similar to those passed to appellant and had, on no occasion, found them to contain other than narcotics.[4]

Appellant's sole contention is that the officer was without probable cause to arrest him and that therefore the narcotics were seized in violation of his fourth amendment rights. We disagree, and affirm the judgment of conviction.

> In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved. [Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).]

There is, of course, a great difference between the *quanta* of proof required to establish guilt in a criminal case and that required to establish probable cause for an arrest. Draper v. United States, 358 U.S. 307, 312, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■ The facts and circumstances within the officer's knowledge, at the time of the arrest, are therefore controlling, and the only requirement is that they be sufficient in themselves to warrant a man of reasonable caution in the belief that a crime is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The standard is that of "a reasonable, cautious and prudent peace officer" and must be judged in the light of his experience and training. Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). [Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 309 (1967).][5]

■ The facts and circumstances known to the officer at the time of arrest in this case were that appellant and his companion were in an area where narcotics traffic was substantial, and were engaged in a transaction in which a number of small flat tinfoil packets were passed.[6] Throughout the officer's experience on the narcotics squad, which was for a period of 18 months during which he was involved in over 200 arrests, he had seen similar packets and had always found narcotics in them.

Judge Prettyman anticipated a situation similar to that with which we are presently confronted when, in Bell v. United States, *supra*, he declared:

An officer experienced in the narcotics traffic may find probable cause in the smell of drugs and the appearance of paraphernalia which to the lay eye is without significance. [254 F.2d at 86.]

---

3. He had served 18 months on the narcotics squad and participated in over 200 arrests.

4. Another officer, an expert witness, testified later that tinfoil packets and glassine envelopes are being used now to transport narcotic drugs because capsules are becoming scarce.

5. *In accord, e. g.,* Harrison v. United States, D.C.App., 267 A.2d 368, 370 (1970).

6. A question has been raised respecting the officer's ability to ascertain the specific nature of the packets. He testified that it was still light out at 6:45 p. m. on November 13 (it was, in fact, dark). However, he stated also that there was a street light on that corner. Noting that there was no evidence introduced to contradict his testimony, we cannot hold clearly erroneous the conclusion that he did, in fact, see that the packets were as described before making the arrest.

Viewing the facts, judged in light of the officer's experience, we are of the opinion that there was a reasonable basis for his belief that a crime was being committed. We conclude therefore that the arrest was based on probable cause, from which it must follow that the evidence was properly admitted.

Affirmed.

GALLAGHER, Associate Judge (dissenting):

In my view this was an arrest based upon a suspicion, which turned out to be correct. The circumstances here do not rise to the level of probable cause.

It appears the arrest was based essentially upon these factors:

(a) The arresting officer knew from his experience on the narcotics squad that narcotic drugs are sometimes transported in tinfoil packets.

(b) He also knew that the area of the city where the arrest took place has a high rate of narcotics traffic.

(c) Consequently, when he saw the companion examine and then pass to appellant a number of tinfoil packets which the latter put in his pocket, he "assumed" they contained narcotics.

The officers did not know appellant and his companion and had no information concerning them. There were no other suspicious circumstances leading to their arrest related by the officer.

The trial court entered these findings:

The officer indicated that it was not dark, still light. He saw the other gentleman remove tinfoil packs, and that the defendant took possession, and that the officer assumed what was inside the tinfoil packets from his knowing the area and experience, some 200 arrests. I believe in that situation, from the experience of the officer, there is probable cause.

The arrest took place at 6:45 p.m. on November 13, 1970. During cross-examination, the officer said it was still light when the arrest occurred. The trial court apparently thought visibility at the time of the arrest was material as it specifically adopted in its findings the testimony of the officer that it was not dark when it occurred. Yet, it is a matter of common knowledge that at 6:45 p.m. in the middle of November in this city it is dark and has been for some time.

Be that as it may, I do not believe that seeing tinfoil packages being given to another person in an area known for narcotics traffic is enough to arrest for a narcotics offense, as was done here. Remers v. Superior Court of Alameda County, 2 Cal. 3d 659, 87 Cal.Rptr. 202, 470 P.2d 11 (1970). Even though narcotics are known to be wrapped in tinfoil these days, so are many legitimate items. Next year it may be tissue paper or brown bags.

Due to the present use of tinfoil packages to transport narcotics, observation of them may well be an important factor leading to arrest if combined with another suspicious circumstance, totaling to probable cause. The area of an arrest may at times be a valid consideration in evaluating circumstances leading to an arrest. On the other hand, its relevance goes only so far and should stop short of being used to "bootstrap" into probable cause to arrest.

In affirming a conviction in Peterkin v. United States, D.C.App., 281 A.2d 567 (decided October 6, 1971), this court described the circumstances leading to the arrest as a borderline situation. There, in a known narcotics area of the city, the police saw from 10 feet away a transfer of pills from a vial to a person in exchange for two or more dollar bills. Measuring those circumstances against the facts presented here, I think these fall below the border. There may well have been cause for further investigation by the officers but I think when the arrest occurred probable cause was lacking.