Edmund Gordon CLARK, a minor, suing by Buster Clark, his father and next friend, et al., Plaintiffs-Appellees,

v.

Joseph ZIEDONIS, Individually, and in his capacity as Police Officer in the Police Department of the City of Milwaukee, Defendant-Appellant.

No. 74–1157.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 22, 1974.

Decided March 26, 1975.

Rudolph T. Randa, Milwaukee, Wis., for defendant-appellant.

Gary A. Gerlach, Milwaukee, Wis., for plaintiffs-appellees.

Before CUMMINGS and TONE, Circuit Judges, and WYZANSKI, Senior District Judge.*

CUMMINGS, Circuit Judge.

In this action brought under 42 U.S.C. § 1983, plaintiffs Edmund Clark and Edward Travis, both minors, sued defendant, a Milwaukee police officer, for violating their constitutional rights by purportedly using excessive force while arresting them.[1] In a bench trial, the district court concluded that defendant had used excessive force in making these arrests. Clark was awarded $5000 in damages and Travis was awarded $1500.[2]

As shown by the evidence, at 10:00 p.m. on January 11, 1971, defendant and a fellow police officer responded in their squad car to a radio dispatch providing: "Entry in progress. Three Negro males on the scene across from 3175 North 29th Street" in Milwaukee, Wisconsin. When the officers arrived on the scene, they found the two principal plaintiffs, each 13 years of age, and 14-year-old Joseph French outside 3164 North 29th Street. They had been ringing the front and rear doorbells of the almost unlighted home of Mrs. Emma Schwister, who thereupon called the police. Upon observing the police officers, Clark, Travis and French ran directly to the edge of the lot located at 3160 North 29th Street. Believing that plaintiffs, who were five to ten yards away from defendant when he first observed them, had attempted to commit a burglary, defendant pursued them and ordered them to halt. When defendant gave a second command to halt, the fleeing Travis turned back toward defendant. Travis was wielding a thin 12″ steel blue file which, defendant claims, resembled a long-barreled revolver. At that moment, defendant fired a warning shot over plaintiffs' heads. When, moments later, Travis again turned toward defendant with the file in his hand, defendant discharged his shotgun, wounding both Clark and Travis. When the shotgun blast that injured them was fired, plaintiffs were approximately 45 feet from defendant in the gangway adjacent to 3160 North 29th Street.

At the conclusion of the trial, the district court made certain findings from

* Senior District Judge Charles Edward Wyzanski, Jr. of the District of Massachusetts is sitting by designation.

1. Plaintiffs' complaint specifically alleges that "the defendant Joseph Ziedonis acted wilfully, wantonly, knowingly and purposefully with specific intent to deprive plaintiff Edmund Gordon and plaintiff Edward Travis of their rights to freedom from physical injury, abuse, coercion and intimidation; all of these rights are secured to plaintiffs by the provisions of the Eighth, Ninth and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983." The use of excessive force by police officers in effecting an arrest is a well-recognized ground for liability under 42 U.S.C. § 1983. See Monroe v. Pape, 365 U.S. 167, 81

S.Ct. 473, 5 L.Ed.2d 492; Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir. 1973), certiorari denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32; Kerr v. City of Chicago, 424 F.2d 1134, 1140–1141 (7th Cir. 1970), certiorari denied, 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64; Collum v. Butler, 421 F.2d 1257, 1259–1260 (7th Cir. 1970); and Hardwick v. Hurley, 289 F.2d 529, 530–531 (7th Cir. 1961); see also Jenkins v. Averett, 424 F.2d 1228, 1231–1233 (4th Cir. 1970).

2. Clark's father, Buster Clark, was an additional plaintiff and received $1767.31 for special medical damages. Travis' mother, Carrie Staples, was also a plaintiff and received $279.83 for special medical damages.

the bench. Preliminarily, the court ruled that plaintiffs had the burden of showing by the preponderance of the evidence that there was unreasonable force applied. The court also stated that much of the plaintiffs' credibility was in doubt. The court then remarked:

> "I also believe that the officers were justified in believing that there was a felony in progress, that all the circumstances of the telephone calls reporting the alleged felony in progress, coupled with finding the three men at about the right place without any apparent justification for their having innocently come upon Mrs. Schwister's locale, all lead me to believe that the officers were entitled to conclude that there was probable cause to believe that a felony either had been committed or was in progress and that these three men reasonably were ones who had engaged in it."

Judge Gordon then remarked that he would have to evaluate whether the circumstances warranted defendant's use of a gun, stating:

> "On the one hand, we have a felony in progress; we have probable cause to believe that the three men who were observed were perpetrators of that felony; we have darkness; we have failure to halt, at least by several of the suspected perpetrators. On the other hand, we have great force used —shotgun; we have juvenile perpetrators.

> "I think the issue that's probably going to have to be determinative—the issues that are going to be determinative are whether Mr. Ziedonis reasonably believed, from the circumstances of either fear, force, own safety or for that of his fellow officers, that there was justification to shoot at the plaintiffs."

Several weeks later in a decision and order reported in 368 F.Supp. 544 (E.D. Wis.1973), the district court concluded that defendant's use of "deadly force" [3] was unreasonable and excessive under the circumstances. The court entered judgment for plaintiffs on the basis of its findings. On appeal, defendant contends that his use of deadly force was justified because: (1) defendant reasonably believed that the shooting was necessary to protect himself and his partner from imminent threat of death or great bodily harm and (2) as a police officer, defendant was privileged to use deadly force to apprehend plaintiffs whom he reasonably believed to be fleeing felony suspects.

*Self-defense and Defense of Partner*

The law has traditionally recognized that a person may employ deadly force against another, if such person reasonably believes such force necessary to protect a third person or oneself from imminent death or great bodily harm, without incurring civil liability for injury to the other.[4] Since this is a suit under 42 U.S.C. § 1983, federal law determines the adequacy of the defenses asserted.[5] This Court accepts the traditional principle noted above as a complete defense to an action against a state official under Section 1983. Nevertheless, we reject defendant's contention that the district court erred in finding this defense inapplicable in this case.

As to defendant's contention that he viewed Travis' first file-wielding move "as a confrontation by someone holding

---

3. While "deadly force" has been variously defined, the district court's conclusion that the use of a shotgun is within the definition is correct under any definition. Compare Model Penal Code § 3.11(2) (1962) with Ill.Rev.Stat. Ch. 38, § 7–8 (1974) and N.Y. Penal Law § 10.00(11) (McKinney's Consol.Laws c. 40, 1967).

4. 4 Blackstone Commentaries 184 (Lewis's ed. 1897 at 1582). See Restatement (Second) of Torts §§ 65, 70, 71 and 76 (1965); Rummel, "The Right of Law Enforcement Officers to Use Deadly Force to Effect an Arrest," 14 N.Y. L.F. 749, 751–752 (1968); and Perkins, "The Law of Arrest," 25 Iowa L.Rev. 201, 283–285 (1940); see e. g., Wis.Stat.Ann. § 939.48(1) (1958).

5. Hampton v. City of Chicago, Cook County, Illinois, 484 F.2d 602, 607 (7th Cir. 1973), certiorari denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471; see McLaughlin v. Tilendis, 398 F.2d 287, 290 (7th Cir. 1968).

a long-barreled revolver, and that he feared for his life," the trial judge noted that the street area was lighted, the distance between the two was short, the file did not resemble a gun, and defendant only fired over the head of Travis at that time. In concluding that defendant had used unreasonable force in firing his second shot directly at Travis and Clark after a second such confrontation in a darker gangway, the court stated:

> "While the defendant's testimony as to his frightened state of mind stands unchallenged by any of the testimony of the plaintiffs, I conclude that the defendant's second shot, which was aimed directly at the suspects, was clearly unreasonable and unjustified. The lighted conditions, the proximity of the actors, the physical appearance of the file, the nature of the wounds, the defendant's 'warning' shot during a 'confrontation' which he says caused him to fear for his life, the suspects' retreat, and the defendant's awareness both of his partner's presence at the suspects' only available avenue of escape, and of his partner's knowledge of the warning shot, represent the circumstances which persuade me that the defendant used excessive force in effecting the arrest." 368 F.Supp. at 546

The district court clearly recognized the defendant was privileged to use deadly force in self-defense or in defense of a third person.[6] Therefore, the court's recitation of the factors which made it improbable that defendant could have perceived the file as a source of imminent danger amounts to a finding of fact that defendant could not have reasonably believed his or his partner's life endangered.

■ While, if we were the trier of facts we might have found that defendant reasonably feared for his own or his partner's safety, Fed.R.Civ.P. 52(a) does not permit us to upset the district court's finding "unless clearly erroneous." On this record, for the reasons he stated, it was permissible for Judge Gordon to find that the defendant did not reasonably believe that his or his partner's life was endangered. Therefore, it would be improper for this Court to set aside the trial court's finding on this issue.

### Police Officer's Privilege to Apprehend Escaping Felons Using Deadly Force

■ As *amicus curiae* advises,[7] at common law an officer may use deadly force where necessary to apprehend the fleeing perpetrator of any felony.[8] While most states still follow the common law rule, the proliferation of crimes classified as felonies and the reservation of the death penalty for only a very few of them has lead a small group of states to modify the common law rule. These authorities now limit the privilege to certain felonies,[9] apparently including burglary, which are deemed to represent some threat of harm to persons and are variously labeled "forcible", "dangerous" or "serious" felonies.[10]

---

6. The trial court said, "the issues that are going to be determinative are whether Mr. Ziedonis reasonably believed under the circumstances of fear, force, *own safety or that of his fellow officers,* that there was justification to shoot at the plaintiffs" (emphasis added). See quotation, *supra* p. 81.

7. Professor Fred E. Imbau and others have filed a helpful brief for the Americans for Effective Law Enforcement, Inc.

8. 4 Blackstone Commentaries 292–293 (Lewis's ed. 1897 at 1684–1685); Rummel, *supra* note 4, at 751–752; Note, "Justifiable Use of Deadly Force by the Police: A Statutory Survey," 12 Wm. & Mary L.Rev. 67, 68–71 (1970).

9. The modified approach has been adopted by the American Law Institute in the Model Penal Code; see Model Penal Code § 3.07(2)(b)(iv) (1962). The ALI advocated this modified approach in the original Restatement of Torts. However, in drafting the second Restatement, the common law's "any felony" rule was adopted because no support had been given the original Restatement in the cases. See discussion in Rummel, *supra* note 4, at 750, 756.

   Georgia, Illinois, Louisiana and New York had adopted the modified approach by 1970. Note, *supra* note 8, at 78, n. 56.

10. In Wisconsin, both attempted burglary and attempted robbery are felonies. See Wis.Stat. Ann. §§ 939.32, 943.10 and 943.32 (1958).

 Under either the common law or modified versions of the privilege, an officer may use deadly force only when he reasonably believes that such force is necessary to effect an arrest.[11] The district judge found that defendant did not reasonably believe that his or his partner's life was in imminent danger. He further found that the suspects were retreating, that defendant was aware of his partner's presence at plaintiffs' "only available means of escape," and that defendant knew his partner would be alerted by the warning shot. We think the district court concluded that defendant did not *reasonably* believe deadly force necessary to effect plaintiffs' arrest. While this Court might again have been disposed to make different findings, were it the trier of fact, we cannot fault Judge Gordon's findings on this issue as "clearly erroneous."

 The district court was called upon to make difficult factual determinations. Both of the defenses raised by defendant required the trial court to determine first, whether defendant possessed a certain state of mind and, if so, whether such a state of mind was reasonably possessed under the circumstances.[12] Great deference must be accorded the finder of fact, who is in a position to view the demeanor of the witnesses, where, as here, resolution of the crucial issues requires a determination as to what a party reasonably believed under all the circumstances of the moment. Therefore,

despite our sympathy for the plight of law enforcement officers confronted with criminal suspects, it would be improper for us to set aside the district court's findings in support of its decision that excessive force had been used in effecting these arrests.

Judgment affirmed.

It also appears that burglary is one of the "serious" or "dangerous" felonies which give rise to the privilege to use deadly force under the modified rule. See Stinnett v. Virginia, 55 F.2d 644, 646–647 (4th Cir. 1932); Perkins, *supra* note 4, at 272, 274; Rummel, *supra* note 4 at 752; Ill.Rev.Stat. Ch. 38, § 2–8 (1974) and N.Y. Penal Law § 35.30 (McKinney Supp. 1970).

This accords with the so-called Ma M. Barker rule, which was an acronym taught defendant at the Milwaukee Police Academy. That rule provides that an escaping person can be apprehended, if it is necessary, with the use of lethal force in the case of Murder, Attempted murder, Mayhem, Burglary, Attempted felony, Rape, Kidnapping, Extortion and Robbery (Defendant's Br. 5 and Reply Br. 4; October 3, 1973, Tr. 68–69).

11. Restatement (Second) of Torts, § 131(c) (1965); Model Penal Code § 3.07(1) (1962); Comment, "Use of Deadly Force in the Arrest Process," 31 La.L.Rev. 131, 138–139 (1970); Note, *supra* note 8, at 69–70; and Rummel, *supra* note 4, at 751–752.

12. Both the protection of person and the escaping felon rationales, upon which defendant relies, involve objective elements. Even if one can prove that he actually feared for his own or another's life or that he actually believed deadly force was necessary to prevent the escape of felons, a defense is not established. Unless reasonable under the circumstances, actual fear or belief is not a defense. See text, *supra*, at notes 4 and 11, and authorities cited there.