**UNITED STATES of America**

**v.**

**Robert A. GRIMES, Appellant.**

**No. 22382.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 16, 1969.

Decided Sept. 17, 1969.

Petition for Rehearing En Banc
Denied March 10, 1970.

Mr. H. David Rosenbloom, with whom Mr. Peter Van N. Lockwood, Washington, D. C., (both appointed by this court) was on the brief, for appellant.

Mr. Gerald H. Cohen, Special Asst. U. S. Atty., of the bar of the Supreme Court of Georgia, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty. at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, and Miss Carol Garfiel, Asst. U. S. Attys., at the time the brief was filed, also entered appearances for appellee.

Before McGOWAN, TAMM and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge:

This is an appeal from a conviction, after jury trial in the District Court, of two counts of assault with a dangerous weapon (22 D.C.Code § 502), and one count each of robbery and carrying a dangerous weapon (22 D.C.Code § 2901 and § 3204.) The principal reason urged for reversal is the failure of the District Court to grant appellant's request for a bifurcated trial because of his purpose to offer an insanity defense. The other issues relate to the scope of the cross-examination allowed of appellant, his impeachment by a prior conviction, and the propriety of an instruction. For the reasons appearing hereinafter, we view none of these as requiring reversal.

I

The criminal incident here involved was the armed robbery of a gasoline service station at eleven o'clock in the evening of February 14, 1967. One of the two attendants, Nichols, was in the office counting money. The other, Carter, was asleep in a car located in the bay of the filling station just outside the office. Both office and bay were brightly lit. Two men came into the office and attacked Nichols. Carter awakened and went toward the office. One of the men pointed a gun at him and pulled the trigger, but the gun did not function. That man then grabbed money lying on the desk and fled. Carter chased him for a distance, in the course of which the man once fell and dropped the gun. He got away, however, and Carter returned to the service station office to find Nichols with a bullet wound in his leg. Carter then retrieved the gun which had been dropped in flight, picking it up within a handkerchief, and delivered it to the police officer who had answered the alarm.

The gun was examined for fingerprints, and some were found. Carter gave the police officer a specific description of the man who had tried to shoot him and who had dropped the gun. From the witness stand Carter positively identified appellant as that man. There was also testimony that, after his arrest, appellant's fingerprints were taken, and were found to be the same as those on the gun. The Government's case was completed by the introduction of a certificate to the effect that appellant was

lacking in the requisite authority to carry a gun.

The defense case was addressed to an asserted lack of criminal responsibility, and the witnesses were a psychiatrist,[1] a psychologist, and appellant himself. Appellant related how he had become a user of narcotics, and stated that he habitually carried a gun. On his direct examination, he said that he had, in company with another addict, been taking cocaine during the afternoon and evening of February 14, 1967. The two left appellant's apartment at 10:45 P.M. for the purpose of getting more cocaine, appellant being then "high" and carrying his gun as usual. Upon cross-examination, it was brought out that appellant recalled visiting the service station some 15 minutes later for the purpose of making a telephone call, which he could not complete. Because of the cocaine, he professed inability to recollect anything more of this visit than seeing his companion wrestling with someone and then running. At the close of his testimony, appellant was, over objection, impeached by the admission of a prior conviction for housebreaking.

## II

When the trial was convened, the defense moved the court for a bifurcated trial because it proposed to defend on the ground of a want of criminal responsibility. The court twice inquired of defense counsel if there was to be any defense on the merits (*i. e.*, any claim that appellant had not committed the acts charged), and was twice unequivocally told that there was no such other defense. The court stated on the record its awareness that the question of bifurcation was committed to its discretion, but, in the light of the explicit representations that the only available defense was insanity, it decided to deny the motion. It referred in this regard to our opinion in Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281 (1967), where we indicated doubt that prejudice arising to an abuse of discretion would ordinarily obtain in a denial of bifurcation "[w]here there is no 'defense' beyond putting the Government to its proof * * *."[2]

---

1. The psychiatrist was a private practitioner who had been appointed by the trial court to examine appellant at the Government's expense. A pretrial commitment of appellant to Saint Elizabeths resulted in a report of competence to stand trial, which report was not objected to by the defense.

2. *Harried* is not the only case in which this court has appeared to recognize that a highly relevant factor informing the discretion to be brought to bear upon a motion for bifurcation is the existence or non-existence of a merits defense. In Holmes v. United States, 124 U.S.App.D.C. 152, 154, 363 F.2d 281, 283 (1966), where we first articulated with some precision the discretionary power residing in the trial judge to direct bifurcation, we noted that defense counsel there premised his request on the co-existence of insanity and merits defenses, and we said that "[r]elevant considerations upon a request for bifurcation include the substantiality of appellant's insanity defense and its prejudicial effect *on other defenses.* * * *" (Emphasis supplied). In our most recent discussion of the matter,

Contee v. United States, 133 U.S.App. D.C. ——, 410 F.2d 249, 250 (1969), we said that "a sound exercise of the trial court's discretion will ordinarily result in bifurcation whenever a defendant shows that he has a substantial insanity defense *and a substantial defense on the merits to any element of the charge,* either of which would be prejudiced by simultaneous presentation with the other," and we characterized *Holmes* as noting that "a unitary trial involving *both* the merits *and* the issue of criminal responsibility is replete with potential sources of prejudice." (Emphasis supplied.) In between these two cases, we quoted with approval the language given above from *Holmes,* although finding the proffered insanity defense to be insubstantial, Higgins v. United States, 130 U.S.App. D.C. 331, 401 F.2d 396, 398 (1968); and we considered and upheld the denial of a motion for bifurcation with separate juries in the context of a claim that the Government's evidence was so circumstantial in nature as to raise a serious question as to whether the jury would accept it as adequate proof of the defendant's guilt of committing the act, Parman

Counsel appointed for this appeal ably press upon us a frontal attack upon this formulation. They ask that we take this occasion to eliminate as a factor in the trial court's discretion the presence or absence of a defense on the merits, and that we designate as the single standard for that discretion the substantiality of the insanity defense. They argue that defendants should always, without adducing evidence on the merits themselves, be entitled to put the Government to its proof and also to interpose an insanity defense of serious dimensions. The rational administration of criminal justice, and perhaps the Constitution,[3] dictate, so we are told, that bifurcation invariably be forthcoming in this situation.

We are not persuaded that a trial court's traditional control over the conduct of proceedings before him either should, or must, be subjected, invariably and in the abstract, to such rigid delimitation. Certainly we do not believe that the assurance of justice in the case immediately before us requires reversal solely because of the trial judge's failure to order bifurcation. We do not, in order to affirm here, need to say that there is no conceivable case where bifurcation would not be in order despite the failure to defend on any ground other than insanity. Perhaps *Parman* was such a case, since this court took no special note of the colloquy, quoted in its opinion,[4] wherein counsel made clear that he had no defense on the merits other than the weakness of the Government's proof, and rested its finding of no abuse of discretion upon counsel's insistence upon two juries. But, whether it was or not, we think that the true inquiry for us at this stage of this litigation is whether the trial court exercised its discretion in such manner as to create a danger of injustice necessitating reversal.

We find no such danger here. The Government's case against appellant, insofar as his commission of the acts was concerned, was strong indeed.[5]

v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559 (1968), cert. denied, 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968).

3. In connection with the suggestion that denial of bifurcation here falls short of the Fifth Amendment command of due process, appellant points to the pendency in the Supreme Court of Maxwell v. Bishop, 398 F.2d 138 (8th Cir. 1968), cert. granted 393 U.S. 997 (1968), reargument ordered 395 U.S. 918, 89 S.Ct. 1768, 23 L.Ed.2d 236 (1969), and, in particular, to the question presented in that case as to the Arkansas single-verdict procedure under which the jury in a capital case determines guilt and punishment simultaneously. Appellant also calls our attention to a pending petition for certiorari, Garrison v. Patterson, No. 103 on the Miscellaneous Docket (No. 1873, 1968 Term), in which the arguments advanced in Maxwell are marshalled in support of a claim that the accused cannot be made "to stand trial on the merits and on the issue of insanity at the same time."

4. COUNSEL: We feel in this case, Your Honor, we have a substantial insanity defense and we feel further it would have a prejudicial effect upon the merits of this case.

THE COURT: First of all, what is the defense outside of the insanity defense? Do you care to tell the Court?

COUNSEL: I can, Your Honor. I can say basically aside from our insanity defense we would be attacking the Government's case on the merits.

THE COURT: In other words you are denying the commission of the crime, I take it?

COUNSEL: We would be challenging the Government's having met their burden of proof beyond a reasonable doubt.

THE COURT: Is that all you want to say about it?

COUNSEL: About that particular item, Your Honor.

*I would not make the request for bifurcation unless Your Honor were considering impanelling two juries because I feel bifurcation might be prejudicial if we would have the same jury considering both, and therefore my request would be conditioned upon Your Honor viewing it in that fashion. (Emphasis supplied)* [by the Court in Parman].

399 F.2d at 561 n. 2

5. In Parman the court referred to the fact that, at the close of the Government's case, the defense renewed its motion for bifurcation "because the entire

There was a good opportunity for identification, and a positive and unassailable one was made. Most significantly, the fingerprint evidence supplied one of the most powerful proofs known to the law, and one which forcefully and emphatically corroborated the identification. We think it irrational to suppose, even if appellant be assumed to have been wrongfully deprived of a right to bifurcation, that the jury might, absent the insanity evidence, have entertained a reasonable doubt that he was the one who robbed the filling station. *See* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705, 24 A.L.R.3d 1065 (1967).[6]

### III

■ Two of appellant's other alleged errors on the part of the trial judge are urged upon us in the special context of the bifurcation issue. The first relates to the scope of the cross-examination. It is said, that having denied bifurcation, the court should have been particularly alert to the need to restrict cross-examination in order that appellant be not compelled to incriminate himself with respect to the commission of the acts charged. The ordinary rule in this jurisdiction, as appellant recognizes, is as stated in Branch v. United States, 84 U.S.App.D.C. 165, 171 F.2d 337 (1948):

* * * [I]f the accused testifies in his own behalf in a criminal case, he subjects himself to cross-examination to the same extent as any other witness. He cannot be compelled to testify as to facts not relevant to direct examination, but he can be required to supply the full details of matters within the scope of the direct examination but stated there only in part [footnotes omitted].

Appellant asserts, however, that because appellant had to testify himself to give credence to his insanity defense (by describing his usage of drugs, and his consequent condition and state of mind on the evening in question), the court should preclude any questions which bore upon whether he participated in the commission of the crime.

When appellant finished his direct testimony, he had said that he was in a "high" condition from the injection of cocaine and that he had, armed with his gun, left his apartment with a friend for the purpose of going to get more narcotics. The prosecutor stated that she "would like to go further into what he did in pursuance of the claimed purpose." Appellant's counsel said he would have no objection to that. The court announced that, since appellant had testified about taking drugs just prior to the time of the alleged offense, about his carrying a gun, and about the effect of the drugs upon his consciousness, he would allow cross-examination "as to

evidence was circumstantial." Here, there was no such renewal, and appellant's motions to acquit were confined to the claims that (1) the evidence as to the taking of the money supported attempted robbery at most, and not robbery itself and (2) the evidence was insufficient to show that appellant had assaulted Nichols, as distinct from Carter.

6. The Government vigorously argues that, in the event, appellant's insanity defense proved to be insubstantial, thereby removing any basis for a present claim that appellant was entitled to bifurcation. The Government points in this regard to the testimony of the defense psychiatrist that appellant was, at most, a sociopath, and that mental illness of this kind is not characterized by lack of mental acute-

ness or capacity to understand what one is doing but, rather, by a callousness toward society generally. The psychiatrist also felt that the pattern of appellant's conduct on the night in question, together with the nature of the drug he was taking, suggested that he knew what he was doing at all times. Appellant disputes this view of the weight of his evidence, and asserts that the Government has distorted the effect of that evidence by undue selectivity in its description of it. Although the showing of a lack of criminal responsibility appears to have been something less than overwhelming, we are prepared to assume for present purposes that it was of sufficient dimensions to justify the invocation of the trial court's discretion with respect to bifurcation.

his state of mind at or about the time of the alleged offense," but that he would not permit the prosecutor to inquire as to his possible participation in the offense.

The defense expressed no dissatisfaction with this ruling at the time it was made, but there were objections made later to particular questions as falling into the forbidden area. We have reviewed the record in detail on this point, and we do not think the court departed in any substantial or significant way from its announced ruling. Appellant had opened up in his direct examination several matters which were legitimate subjects for pursuit on cross-examination. In particular, having brought himself within 15 minutes of the time of the offense and having concluded his testimony by referring to his "high" state and his setting out to get more drugs, the prosecutor was clearly entitled to inquire into the unfinished aspects of these matters, as they related to the state of appellant's mind. If the answers had the effect of placing him at the service station, albeit in an assertedly innocent connection, that is still far from permitting the prosecutor to query appellant about his participation in the criminal events.

■ The second evidentiary ruling complained of is the impeachment of appellant by the housebreaking confession. *See* Luck v. United States, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965). As in the case of the cross-examination issue, appellant insists that the court's discretion to permit impeachment was measurably constricted by its denial of bifurcation, in view of the practical need for appellant himself to tell of his afflictions in support of his insanity defense. But a discretion arguably exercisable within narrower bounds than usual is still a discretion, and our task remains the limited one of looking to see if it has been abused to a point indicating reversal. We find no such abuse here.

The prior crime was of a kind which this court has expressly held to be appropriate for use in impeachment. Gordon v. United States, 127 U.S.App.D. C. 343, 383 F.2d 936 (1967). Its age (six years) and its foundation upon a guilty plea did not automatically outlaw it. At trial, indeed, the defense argued in support of its objection that the prior conviction added very little, since appellant's own testimony on direct examination showed a history of criminality. For the reasons stated hereinabove, we are not inclined to believe that the impeachment had much impact on the jury's determination of appellant's participation in the robbery, and, in any event, we are not prepared to find a reversible abuse of discretion in the trial court's handling of the matter. *See* Weaver v. United States, 133 U.S.App. D.C. 66, 408 F.2d 1269 (1969), cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L. Ed.2d 245 (1969).

### IV

■ Appellant brings to our attention on appeal an objection to an instruction which was not raised at the trial. One of the instructions given in connection with the insanity defense was as follows:

"Ladies and gentlemen, if you find the defendant not guilty by reason of insanity at the time of the commission of the alleged offenses, I would inform you that he would be immediately confined in a mental hospital for examination until his present mental capacity has been established, and thereafter there will be a subsequent judicial determination as to whether there is a need for further exploratory care and treatment."

This instruction, which appellant's trial counsel characterized as "satisfactory," but which the prosecutor thought inadequate under our cases,[7] is now ar-

---

7. We dealt with this subject in Lyles v. United States, 103 U.S.App.D.C. 22, 25, 254 F.2d 725, 728 (1957), where we said:

We think that when the instruction is given the jury should simply be informed that a verdict of not guilty by reason of insanity means that the ac-

gued by appellant to be so prejudicial as to constitute plain error warranting reversal. Rule 52(b), Fed.R.Crim.P. It is said that it fails, particularly in its concluding clause, to convey adequately to the jury the conditions under which one found not guilty by reason of insanity might regain his freedom.

The instruction as given is hardly a model to be followed, even under our pre-*Bolton* formulation, and we think the court would, insofar as we can tell from the record, have been well advised to have heeded the advice of the prosecutor on this score. The reference to "further exploratory care and treatment" has no foundation in the governing statutes; it is a muddy phrase at best, and, at worst, a misleading one. However, there is a sufficient intimation of continued incarceration to dull the danger of the jury's having a vision of appellant walking out of the courtroom a free man upon its return of an insanity verdict. This was presumably the light in which it appeared to defense trial counsel, who was zealously alert throughout the long trial to protect appellant's interests; and we are not persuaded to view it from this more remote vantage point as a "plain error affecting substantial rights" within the meaning of Rule 52(b).

Affirmed.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON and ROBB, Circuit Judges, in Chambers.

## ORDER

PER CURIAM.

On consideration of appellant's suggestion for rehearing *en banc*, it is

Ordered by the Court *en banc* that appellant's aforesaid suggestion is denied.

Statement of Chief Judge BAZELON as to why he would grant rehearing *en banc*.

BAZELON, Chief Judge:

Appellant sought and was denied a bifurcated trial upon the issues of commission of the acts charged and criminal responsibility, in order to be able to present his substantial insanity defense *without losing his privilege against self-incrimination.* Testifying at trial in support of his claim of insanity, he was forced on cross-examination to place himself at the scene of the crime at the time it took place. A division of this court refused to decide his constitutional claims on the ground that any error in the admission of his testimony was harmless error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

But the teaching of *Chapman* is that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless." [1] A coerced confession may not be so treated,[2] and it is not immediately apparent to me why incriminating statements, not amounting to an outright confession, deserve different treatment. I know of

cused will be confined in a hospital for the mentally ill until the superintendent has certified, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or to others, in which event and at which time the court shall order his release either unconditionally or under such conditions as the court may see fit.

We considered the matter again in Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968), where at 395 F.2d 651 n. 50 we suggested a revision:

"If the defendant is found not guilty by reason of insanity, it then becomes the duty of the court to commit him to

Saint Elizabeths Hospital for examination. After this examination a hearing will be held to determine whether defendant is dangerous to himself or others due to mental illness. If he is, defendant will remain at St. Elizabeths until it is established that he is no longer dangerous due to mental illness, at which time he will be released and will suffer no further consequences from this offense."

As the Government reminds us, Note 50 was not added to *Bolton* at the time this case was tried, and the trial court was not on notice of it.

1. 386 U.S. at 23, 87 S.Ct. at 827.

2. *Id.* at 23 n. 8, 87 S.Ct. 824.

no case in which the Supreme Court has found the admission of such statements by a defendant himself to be "harmless error." [3]

On the ultimate issue, I think that appellant has raised a substantial claim that the Constitution entitles him to a bifurcated trial on the issues of commission of, and responsibility for, criminal acts.[4] His argument, as I understand it, has two prongs. The first is that he has an absolute due process right to put the government to its proof, and at least a common-law right to plead not guilty by reason of insanity. Forcing him to waive his right to put the government to its proof in order to obtain the benefit of the insanity defense places an impermissible burden on the exercise of his due process right. Particularly since in this case bifurcation would have resulted in little inconvenience to anyone,[5] its denial was, he asserts, an unnecessary and therefore unconstitutional[6] burden upon his right to put the government to its proof.

The second prong of appellant's argument is based on his privilege against self-incrimination. The Fifth Amendment provides him with the right not to be compelled to testify against himself. In the present case, he did testify; and it seems clearly apparent that his only motive for testifying was to support his claim of insanity. Had he failed to testify and to present other evidence relevant to his insanity claim—but highly prejudicial on the issue of guilt—he would have been forced to abandon his insanity defense. This sanction—loss of his strongest defense to the crime charged—was, he argues, sufficient to establish that his testimony was compelled and therefore inadmissible on the issue of guilt.[7]

Both prongs of appellant's argument raise serious, substantial, and far-reaching questions concerning the administration of the insanity defense in this circuit. Since it is not clear to me that the error, if any, in appellant's trial can properly be treated as harmless, I would grant rehearing *en banc.*

3. *Cf.* Simmons v. United States, *390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)* (ownership of suitcase containing incriminating evidence), on remand *sub nom.* United States v. Garrett, *395 F.2d 769 (5th Cir. 1968).*

4. His insanity defense was substantial, and he duly moved for bifurcation at trial. *Compare* Pope v. United States, *372 F. 2d 710, 727–730 (8th Cir. 1967)* (en banc) (no trial motion for bifurcation and no substantial prejudice) ; United States v. Curry, *358 F.2d 904, 913–916 (2d Cir. 1966)* (bifurcation of guilt and penalty unnecessary because motion abandoned at trial and no actual prejudice) ; *id.* at 919–922 (Hays, J., dissenting).

5. Since appellant presented no defense on the merits, bifurcation would have been a simple matter. At the close of the government's case, counsel could have summed up, and the jury could have been charged, on the issue of guilt. If the jury returned a verdict of guilty, the same jury could immediately have begun hearing evidence on the issue of sanity.

6. "The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive."

United States v. Jackson, *390 U.S. 570, 582, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968).*

7. *Cf.* Simmons v. United States, *390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)* (threatened loss of Fourth Amendment claim sufficient to render testimony involuntary and inadmissible on issue of guilt). In this regard, defendants who did testify may be in a different position from those who failed to testify and thereby lost only their insanity defense. Tehan v. Shott, *382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966),* held that Griffin v. California, *380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)* was not retroactive as to defendants who had failed to testify and at whose trial the prosecutor had commented on that failure. But in United States v. Jackson, *390 U.S. 570, 583 n. 25, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968),* the Court clearly implied that notwithstanding *Tehan,* at least some of those defendants who *had* testified because of the threat of improper comment should they fail to do so could obtain retrials on the ground that their testimony had been improperly compelled.