**UNITED STATES of America,**
**Appellee,**

v.

**James Eugene FRANKLIN, Jr.,**
**Appellant.**

**No. 20035.**

United States Court of Appeals, Eighth Circuit.

July 22, 1970.

Rehearing En Banc Denied Aug. 13, 1970.

Rehearing Denied Aug. 20, 1970.

Donald R. Wilson, Clayton, Mo., for appellant.

Peter T. Straub, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr.; U. S. Atty., St. Louis, Mo., on the brief.

Before VOGEL, HEANEY and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

James Eugene Franklin, Jr., defendant-appellant, was charged in a four-count indictment with violations of 26 U.S.C.A. § 4704(a) and 26 U.S.C.A. § 4705(a). Counts I and III charged unlawful purchases of heroin, while Counts II and IV charged violations of § 4705(a) in that the defendant was charged with selling narcotic drugs oth-

er than in pursuance of a written order. Defendant was found guilty by a jury on all four counts. He was thereafter sentenced to five years in the custody of the Attorney General on each of the four counts, the sentences to run concurrently.

In this direct appeal, defendant raises a number of claimed errors which he believes justify this court in reversing and directing a dismissal. In affirming, we consider each claim separately.

1. Defendant's first contention is that the trial court erred in denying his motion to dismiss the indictment because no record of the grand jury testimony of the government witness Agent Moriarty was made. Defendant claimed a "particularized need" for Moriarty's testimony before the grand jury in that Moriarty, in preparing or contributing to a Jencks Act statement referred to the defendant as James Eugene Franklin, Jr., alias "Foots" and it appeared that "Foots" was not the nickname of the defendant but that of John Franklin, the defendant's brother. Defendant relies principally upon Dennis v. United States, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L. Ed.2d 973, and also cites Melton v. United States, 10 Cir., 1968, 398 F.2d 321. In both cases, a record was made of the testimony before the grand jury. Therein it was established that the defendants had a "particularized need" for the grand jury testimony and that the ends of justice required it be produced. See United States v. Youngblood, 2 Cir., 1967, 379 F.2d 365, 367–368. In the instant case, however, no record was made of the grand jury testimony so that defendant's request therefor could not be complied with. Rule 6 of the Federal Rules of Criminal Procedure, 18 U.S.C. A., provides that a record *may* be made of the testimony but it is not mandatory. We know of no case which holds that the failure to record and transcribe testimony given before a grand jury is ground for dismissal of any indict-

ment returned. In McCaffrey v. United States, 10 Cir., 1967, 372 F.2d 482, cert. denied, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332, in answer to a similar contention, the court held squarely that there was no requirement that grand jury proceedings be recorded or transcribed. In Loux v. United States, 9 Cir., 1968, 389 F.2d 911, at page 916, cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L. Ed.2d 135, the court held:

"The law does not require that the testimony of witnesses before a grand jury be recorded or transcribed. Rule 6(d), F.R.Crim.P. is permissive, not mandatory. Every court that has considered the question has so held. United States v. Caruso, 2 Cir., 1966, 358 F.2d 184, 186; United States v. Cianchetti, 2 Cir., 1963, 315 F.2d 584, 591; United States v. Martel, D.C.N. Y., 1954, 17 F.R.D. 326 (cited with approval in *Cianchetti*, supra); United States v. Hensley, 6 Cir., 1967, 374 F.2d 341, 352; Welch v. United States, 10 Cir., 1966, 371 F.2d 287, 291. Nor is there support for the claim that failure to record grand jury testimony violates the defendants' constitutional rights. United States v. Cianchetti, supra, and United States v. Hensley, supra, are to the contrary. See also Lawn v. United States, 1958, 355 U.S. 339, 349–350, 78 S.Ct. 311, 2 L.Ed.2d 321; Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397."

While *Loux* is perhaps justifiably coming under criticism, see United States v. Thoresen, 9 Cir., 1970, 428 F.2d 654 (majority and concurring opinions), it still is controlling authority. See Jack v. United States, 9 Cir., 1969, 409 F.2d 522, 524.[1]

■ We might point out additionally that counsel for defendant, through the use of Jencks Act statements, was able to bring out on cross-examination the fact that there was some confusion as to

1. Should we adopt defendant's position the rule would probably only apply prospectively and be of little help to him. Cf.

United States v. Youngblood, supra, 379 F.2d 365.

whether or not the defendant was known as "Foots". There was no prejudice to the defendant and the trial court properly overruled the motion to dismiss the indictment for failure to have the testimony before the grant jury recorded and transcribed.

2. Defendant's second contention is that the trial court erred in allowing Agent Stamm to testify, over objection, with respect to a pre-trial photograph identification of defendant by the informer Gibson. Defendant cites and relies on Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

■ The substance of what Agent Stamm testified to was that after the March 13, 1969, purchase of heroin by informer Gibson, Gibson was given a number of photographs from which he identified one as that of defendant as the seller. We find no violation of the proscriptions set forth in *Simmons*, which also held "* * * each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971. Here the informer picked out a picture from a number exhibited to him subsequent to the sale episode. He also identified the defendant in court at the time of trial. Furthermore, he testified that he knew the defendant for approximately a year and a half before the in-court identification. We find nothing "impermissively suggestive" or unfair or prejudicial to the defendant in the manner of handling the identification of defendant.

■ 3. Defendant next complains that the trial court erred in refusing to compel the witness Agent Moriarty to comply with the subpoena duces tecum which had been served upon him. By subpoena duces tecum defendant sought to obtain from Agent Moriarty three things: (1) a photograph of the defendant with "Foots" written on the back side; (2) the arrest and conviction record of the witness informer Gibson; and (3) disbursements made by the government to informer Gibson. As to the photograph, Moriarty denied its existence, which contention was supported by other testimony. With reference to the second request, Moriarty stated that to his knowledge Gibson had no record of convictions of either the federal or state narcotics laws. Accordingly, he was unable to furnish record thereof. As to the third request, Moriarty stated that he knew and could furnish the information requested and he stated that the amount of money paid for the period March 3rd through the Thursday before the trial date, October 23, 1969, was $786.00. We think the court could well have insisted on Moriarty's bringing to the court such records as existed regarding the payments made to the informer Gibson but we do not believe that failure to do so justifies a conclusion that the defendant was prejudiced thereby.

4. Defendant's fourth complaint is that the trial court erred by unduly restricting his cross-examination of the informer Gibson. During the cross-examination of Agent Moriarty, it appeared that Moriarty had not brought any material indicating violations of the federal or state narcotic laws by the informer, George Gibson. The following occurred out of the hearing of the jury:

"MR. WILSON [Attorney for defendant]: Your Honor, I request that the witness be held in contempt.

"THE COURT: He says he has the information in his head.

"MR. WILSON: In addition, Your Honor, he has been subpoenaed to bring books and records.

"THE COURT: Let me see.

"MR. STRAUB [Attorney for the government]: Your Honor, he has no access to F.B.I. records so far as prior convictions are concerned with respect to this witness or the informant.

"MR. WILSON: I know this man has a prior record. That has [sic] been brought from the Police Department today. I think it is directly relevant to indicate the hold they have on this informant.

"THE COURT: This is an arrest, this isn't a conviction.

"MR. STRAUB: I think the question is whether he has been convicted.

"THE COURT: You can't get the information from this witness. If he [the informer Gibson] takes the stand then you have a perfect right to ask about convictions, or show convictions. Arrests are not admissible anyhow.

"MR. WILSON: It is our position, Your Honor, that these are narcotics violations which this gentleman and his office have handled and they decide whether the information is produced.

"THE COURT: That is not true.

"MR. WILSON: I simply want to know if this man has a string of narcotics offenses and he has the information I am quite. sure in his possession.

"THE COURT: You can ask him as to what convictions he has had. Go ahead and ask him."

The following occurred in the presence and hearing of the jury:

"Q (By Mr. Wilson) Did I understand, Mr. Moriarty, from your previous answers to my questions that although you have no papers here with you you know the answer to my request?

"A Yes, sir, I believe I do.

"Q Could you tell me what your answer is?

"A The subject, George C. Gibson, to my knowledge, this I know for a fact, sir, has no Federal Narcotics violations. To my knowledge he has no State narcotic convictions or violations.

"Q What do you mean by using the term violations?

"A Whether it be suspect or something he was actually committed to an institution for, sir."

█ In support of his contention that in cross-examination of a witness it is proper to show that the witness had a motive to testify falsely about a particular matter and that showing the existence of such motive is to be distinguished from an attempt to merely discredit or impeach a witness generally, defendant cites a number of cases which support his contention. See 3 Wigmore Evidence § 967 (3d Ed.) (and authorities cited therein). We have no quarrel with the rule or the supporting cases but they are inapplicable here. We have read the cross-examination of the informant Gibson in detail. Counsel for the defendant was able to bring out that he, Gibson, had been arrested for stealing under $50.00; that the Federal Narcotics Agents approached him with the suggestion that they would attempt to aid him in the state case if he would inform for them. He entered a plea of guilty in the state case, was given a one-year sentence but placed on probation. The informer Gibson denied obtaining $35.00 from a former employer on the promise that he could obtain possession of and return certain previously stolen merchandise from the employer. No other questions were asked which were not answered and no offer of proof with reference to any state or federal narcotic violations was made. The cross-examination was thorough and was not unduly restricted. We find no error.

5. It is defendant's contention that the trial court erred in refusing to allow the defendant to place in evidence the Jencks Act statements. At the end of defendant's case counsel for defendant attempted to offer in evidence the Jencks Act statements previously furnished to him by the prosecution. The following occurred:

"MR. WILSON: I would like also to offer—First let me have it marked.

"THE COURT: You are not going to put that report in evidence. You have

read the pertinent parts to the jury and used it in cross-examination. Is that what you are trying to get in?

"MR. WILSON: Yes, sir.

"THE COURT: No, sir.

"MR. WILSON: All right, thank you.

"Defendant rests, Your Honor."

■ Apparently the Jencks Act reports and statements, all of which were given to defendant's counsel at his request, disclosed the confusion that existed in the minds of one or more of the government agents that the defendant James Eugene Franklin, Jr., was also known as "Foots". Counsel for defendant was able to exploit the confusion very thoroughly on cross-examination of government witnesses; he had possession of the Jencks Act reports and statements for some time, he used them in cross-examination of the government witnesses, and read pertinent parts thereof to the jury, so that under these circumstances we find no prejudice to the defendant even though we think the trial court should not have refused to receive them. No substantial prejudice is indicated.

6. Defendant's final contention is that the trial court erred in allowing, during the cross-examination of the defendant, improper attempts at impeaching his credibility, the effect of which was to prejudice the jury against the defendant. More specifically, it is defendant's contention that over objection the government was allowed to ask the defendant if he was an addict, whether he used narcotics in March 1969, whether he used narcotics in May 1969 and whether he used narcotics on May 21, 1969. The dates all have to do with times charged in the indictment. In defendant's response to the questions he stated that he did use narcotics, that he used narcotics in March 1969 and in May 1969, but that he had not used narcotics on May 21, 1969. He denied ever having sold narcotics and reasserted his innocence as to the charges against him.

■ We think that in cross-examination of a defendant charged with Narcotic Act violations who has offered testimony in his own behalf by taking the witness stand, it is competent, relevant and in no way improper to inquire of such a one if he was a narcotics addict, this in spite of the fact that on direct examination he gave no testimony relating to his use or non-use of narcotics.

We find the cross-examination proper if for no other reason than that expressed in United States v. Griffin, 6 Cir., 1967, 382 F.2d 823, 828:

"Obviously, the testimony of Mr. Blassingame [the addicted informer] was highly suspect, as well as being essential to Griffin's conviction. It is a '* * * well recognized fact that a drug addict is inherently a perjurer where his own interests are concerned. * * *' Fletcher v. United States, 81 U.S.App.D.C. 306, 158 F.2d 321, 322 [2] (1946)."

In addition, the questions put to the defendant on cross-examination had to do with the dates, places and times specified in the indictment. We find the cross-examination entirely proper.

■ Defendant's next objection under this heading was to the effect that the prosecution asked him where he had been for the week prior to May 21, 1969. Defendant had testified on direct examination that he could not remember where he was on March 13, 1969, the date of the first sale charged in the indictment. As to the second date charging a sale, May 21, 1969, defendant had testified that he was at his home with his wife and daughter, having gotten there about 3:30 in the afternoon and not having left for the rest of the day or night. On cross-examination defendant was asked if anything unusual happened on that day, that is, May 21st, to cause him to remember what he was doing. He replied, "Something very unusual happened, I had been away from home a week."

"Q Prior to that time?

"A Yes.

"Q Prior to that time you had been away from home a week?

"A  Yes, I had.

"Q  All right, where had you been?

"MR. WILSON: Objection, Your Honor; it is irrelevant and immaterial and prejudicial.

"THE COURT: Overruled.

"Q  (By Mr. Straub) Please answer the question.

"A  I was in the City Jail.

"Q  You were released on the 21st?

"A  21st of May."

If proper inquiry aimed at testing the assertion of an alibi elicits information which may be damaging to the defendant in the eyes of the jury, no error is committed.

We have examined this record in detail and conclude that the defendant was justly and fairly tried and that no error amounting to prejudice was committed.

Affirmed.