Horace **DURANT, Jr.**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 6103.

District of Columbia Court of Appeals.

Argued April 5, 1972.

Decided June 30, 1972.

Rehearing Denied July 24, 1972.

George C. Dreos, Washington, D. C., for appellant.

James B. McMahon, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee.

Before PAIR, REILLY and YEAGLEY, Associate Judges.

PAIR, Associate Judge:

Appellant was convicted on two counts of an indictment, one charging him with possession of narcotics in violation of D.C. Code 1967, § 33–402, and the other with carrying a pistol without a license in violation of D.C.Code 1967, § 22–3204. Urging reversal, appellant assigns as errors (1) the denial of his motion to dismiss the indictment because of alleged deficiencies in the grand jury proceedings, (2) the denial of his motion to suppress as evidence the narcotics and the pistol for want of probable

cause for the arrest, search and seizure, (3) the denial of his motion for a judgment of acquittal as to the charge of carrying a pistol without a license, and (4) the trial court's ruling that evidence of a prior conviction for violation of the Uniform Narcotics Law was admissible for impeachment purposes. Finding, after a careful review of the record, that none of the assignments of error is of sufficient substance to require reversal, we affirm.

On April 8, 1971, at approximately 8:30 p. m., appellant was observed by a police officer to receive from an unidentified companion several small tinfoil packets. The observation was made from the window of a vacant first floor apartment at 1321–11th Street, N. W., where, at the request of the owner of the apartment building, two Metropolitan Police Department officers had positioned themselves for the purpose of investigating suspected narcotics activity in the building and in the immediate area.

The transaction occurred on 11th Street approximately ten feet from the window and was witnessed by one of the officers (Officer Roberts) who had made some 50 prior arrests involving narcotics violations. Having found, on those prior occasions, that the narcotics were most frequently

contained in tinfoil packets similar to those observed, he concluded that an illegal transfer of narcotics had been made and exclaimed to Officer Ramey, his partner, "They just made a pass" or "a buy."

The two officers immediately left the apartment building and, observing appellant walking in a southerly direction on 11th Street, followed him to the entrance of premises 1117 N Street, N. W., where he was placed under arrest for possession of narcotics.[1] Officer Roberts then reached into the left pocket of appellant's coat and removed several tinfoil packets of what was later determined to be narcotics. After appellant was handcuffed, a further "pat search" resulted in the seizure of ten additional tinfoil packets of narcotics and a loaded .22 caliber pistol which was found to be operable.

Appellant's challenge to the trial court's refusal to suppress as evidence the narcotics and the pistol[2] and his claim of error in the denial of his motion for judgment of acquittal[3] on the weapons charge do not require extended discussion. However, his contention respecting the motion to dismiss the indictment because of the alleged suppression of evidence during the grand jury proceedings requires more extended treatment.

---

1. The transferor of the tinfoil packets was not pursued because Officer Roberts felt that, for reasons of safety and in view of Officer Ramey's inexperience, they should remain together. Consequently, they decided to pursue appellant whom they had probable cause to believe was possessed of narcotics.

2. The issue is controlled by Munn v. United States, D.C.App., 283 A.2d 28 (1971), where, as here, the facts and circumstances within the knowledge of a police officer with extensive experience in making arrests for narcotics violations were sufficient to warrant a belief that a transaction in narcotics had been accomplished. See also United States v. Brown, U.S.App.D.C. (No. 71–1755, decided April 12, 1972).

3. Appellant's claim of error in the denial of his motion for judgment of acquittal on the weapons charge is frivolous. His

contention is that the evidence did not establish beyond a reasonable doubt that he was not licensed to carry the pistol. But the certificate of the Director, Central Records Division, Metropolitan Police Department, that appellant had no such license on December 21, 1970 and did not have one on August 20, 1971, was certainly sufficient to permit an inference that he had no such license on April 8, 1971, the date of his arrest. Moreover, in view of Article 52, § 3(a) (3), (4) and (5) of the Police Regulations, as amended, it is highly improbable that appellant, because of his criminal record, would have been issued a license. But more than this, by Article 53, § 2(b) of the Police Regulations, it is required that any person possessed of a pistol for which a license has been issued "shall have such license on his person or within his immediate custody," and there is no pretense that he had any such license.

What appears from the minutes of the grand jury proceedings is that, after appellant was placed under arrest, Officer Roberts removed from his person an operable pistol and a number of tinfoil packets containing a white powder which, when tested, was determined to be narcotics. It appears also that a search was made of the files of the Metropolitan Police Department but no record was found that appellant was licensed to possess any pistol on a public street. The following then transpired:

THE FOREMAN: What was the cause of the initial arrest?

MR. McMULLIN [Assistant United States Attorney]: Do you want that on the record?

THE FOREMAN: I just was wondering what—we can go off the record.

(Discussion off the record.)

MR. McMULLIN: Okay, thank you very much, Officer Roberts.

(Whereupon, the witness was excused.)

■ While there appears to be little, if any, difference in result between the destruction of grand jury transcripts and the action of the Government in this case in causing some of the testimony to be given off the record, it is well settled that there is no requirement that grand jury proceedings be recorded in the first place. Thus in United States v. Franklin, 429 F.2d 274 (8th Cir. 1970), the court said:

We know of no case which holds that the failure to record and transcribe testimony given before a grand jury is ground for dismissal of any indictment returned. In McCaffrey v. United States, 10 Cir., 1967, 372 F.2d 482, cert. denied, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332, in answer to a similar contention, the court held squarely that there was no requirement that grand jury proceedings be recorded or transcribed. In Loux v. United States, 9 Cir., 1968, 389 F.2d 911, at page 916, cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135, the court held:

"The law does not require that the testimony of witnesses before a grand jury be recorded or transcribed. Rule 6(d), F.R.Crim.P. is permissive, not mandatory. Every court that has considered the question has so held. United States v. Caruso, 2 Cir., 1966, 358 F.2d 184, 186; United States v. Cianchetti, 2 Cir., 1963, 315 F.2d 584, 591; United States v. Martel, D.C.N.Y., 1954, 17 F.R.D. 326 (cited with approval in Cianchetti, supra); United States v. Hensley, 6 Cir., 1967, 374 F.2d 341, 352; Welch v. United States, 10 Cir., 1966, 371 F.2d 287, 291. Nor is there support for the claim that failure to record grand jury testimony violates the defendants' constitutional rights. . . ." [429 F.2d at 276.]

See also, in this connection, D.C.Super. Crim.Rule 6(d) and (e) which, like Fed. Crim. Rule 6(d) and (e), imposes no requirement that grand jury proceedings be recorded.

■ What is significant in this case, however, is that the testimony, essential to the returning of the indictment, was recorded and there appears to have been no basis in reason for the action of the Government which frustrated a complete record of the testimony. While the action of the Government cannot be condoned, there is no indication in the record that the prosecutor acted in bad faith or with any purpose to suppress inconsistent testimony. Cf. United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642, and following remand, 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971); and United States v. Lepiscopo, 429 F.2d 258, 260 (5th Cir.) cert. denied, 400 U.S. 948, 91 S.Ct. 255, 27 L.Ed.2d 254 (1970). Moreover, the record reveals no inconsistent or impeaching evidence from other sources tending to cast doubt upon Officer Roberts' testimony [4] respecting the circum-

4. Officer Roberts testified both at the hearing on the motion to suppress and at the trial, and there was no inconsistency in his testimony. But more than this,

stances surrounding the arrest. We are not persuaded, therefore, that the impropriety of the prosecutor was of such magnitude as to require dismissal of the indictment.

Appellant's final contention involves a much more weighty problem—that of interpreting D.C.Code 1967, § 14–305(b) (1) (Supp. V, 1972), which controls the use of any prior conviction for the impeachment of a witness.[5] The question presented, therefore, is whether the unlawful possession of narcotics (a misdemeanor) is a criminal offense involving "dishonesty or false statement" within the purview of D.C. Code 1967, § 14–305(b) (1) (Supp. V, 1972).[6]

At first blush, it might appear that Congress, by defining the kind of misdemeanor convictions which can be used against a witness for impeachment purposes in terms of offenses involving "dishonesty or false statement", meant to limit impeachment to such offenses as larceny and related crimes encompassing the taking or misappropriation of property or perjury or fraudulent misrepresentations, and the like. The legislative history of this subsection, however, does not support such strict construction.

The House committee clarified the limitation on the use of misdemeanor convictions for impeachment purposes by stating:

It is the intent of your Committee that the offenses which are excluded from use are primarily those of passion and short temper, such as assault.

The offenses which involve dishonesty or false statement and which may be used in the discretion of the cross-examining party include, but are not limited to, any offense involving fraud or intent to defraud, larceny (Smith v. United States, 132 U.S.App.D.C. 131, 406 F.2d 667 (1968), cert. denied, 394 U.S. 963 [89 S.Ct. 1315, 22 L.Ed.2d 564] (1969); Carr v. United States, 135 U.S.App.D.C. 348, 418 F.2d 1184 (1969), cert. denied, 396 U.S. 1030 [90 S.Ct. 590, 24 L.Ed.2d 525] (1970)); robbery (Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767 (1969)); rape (Young v. United States (D.C. Cir., No. 20269 decided Apr. 14, 1967)); false pretenses, forgery, uttering, embezzlement, housebreaking, or burglary (United States v. Grimes, 137 U.S.App.D.C. 184, 421 F.2d 1119 (1969)); receiving stolen property, sales of narcotic and depressant and stimulant drugs (Brooke v. United States, 128 U.S.App.D.C. 19, 385 F.2d 279 (1967)); unauthorized use of motor vehicle (Davis v. United States, 133 U.S.App.D.C. 167, 409 F.2d 453 (1969)); taking property without right (Williams v. United States, 133 U.S.App.D.C. 185, 409 F.2d 471 (1969)); procuring (Jenkins v. United States, D.C.App., 260 A.2d 677 (1970)); or any attempt to commit any of the above offenses. . . [H.R.Rept. No. 91–907, 91st Cong., 2d Sess., p. 62 (1970).] (Note: Citations in the passage quoted above differ from the original in that they have been completed and corrected where necessary.)

■ Because the sponsors of the legislation clearly intended that the offenses to be excluded are primarily those resulting from passion and short temper and regarded such offenses as procuring and illegal solicitation, or the sale of depressant and

---

there was no conflict between such testimony and Metropolitan Police Department Form 163 which was available to defense counsel at the hearing on the motion to suppress.

5. In Dixon v. United States, D.C.App., 287 A.2d 89 (1972), we removed any doubt as to the constitutionality of § 14–305.

6. Except as provided in paragraph (2), for the purpose of attacking the cred-

ibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment). . . .

stimulant drugs as offenses involving dishonesty or false statement, we would be doing violence to congressional intent if we held that a conviction for possession of narcotics falls within the category excluded by the new statute. We are fortified in this conclusion by a holding of the circuit court of this jurisdiction, handed down even before the effective date of the new amendment, to the effect that "narcotics convictions do bear weight on the issue of credibility." United States v. McIntosh, 138 U.S.App.D.C. 237 at 239, 426 F.2d 1231 at 1233 (1970), decided on the authority of Brooke v. United States, which was cited in the House Report. *Accord*, Williams v. United States, D.C.App., 263 A.2d 659, 662 n. 7 (1970).

We hold, therefore, that a prior conviction for violation of D.C.Code 1967, § 33–402 (possession of narcotics), involves "dishonesty or false statement" within the meaning of D.C.Code 1967, § 14–305(b) (1) (Supp. V, 1972). Accordingly, the trial court did not err when it ruled that such a conviction could be used to impeach appellant if he elected to testify.

Affirmed.