**Marquis HOWELL, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–963.**

District of Columbia Court of Appeals.

Submitted May 7, 1981.

Decided Aug. 4, 1981.

Rehearing Denied Oct. 8, 1981.

Bradley S. Stetler, Arlington, Va., appointed by this court, for appellant.

Charles F. C. Ruff, U.S. Atty., Washington, D. C., with whom John A. Terry, Michael W. Farrell and J. Edward Agee, Asst. U.S. Atty., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and NEBEKER, Associate Judges.

KERN, Associate Judge:

The trial court convicted appellant of possession of marijuana, D.C. Code 1973, § 33–402, upon stipulated facts after an evidentiary hearing at which it denied his pretrial motion to suppress marijuana seized at the time of the arrest.

The court heard testimony at the suppression hearing from a police officer that he had been making observations through binoculars from an unmarked car (Record at 6), "on suspected narcotic dealings" in the southeast area of the city at about 4 p. m. (Record at 5.) The officer observed appellant "reach into his . . . top right coat pocket, and removed a black pouch. At this time, he opened the black pouch and removed a manila envelope and opened the manila envelope and placed it to his nose as

---

if he were smelling the contents." (Record at 6.)

The witness testified that this area "is known for high narcotics trafficking ... in all hours, day and night" (Record at 15), and the envelope is "the type known to us officers to contain narcotics, usually marijuana." (Record at 7.) When asked by the prosecutor "how is it that you know that type of envelope is normally used to package marijuana," the officer replied: "In the majority of the cases that I've come across involving manila envelopes, I would say probably ninety-nine percent of them have contained marijuana." (Record at 7.)

The officer further testified that "I then saw him [appellant] hand it [the manila envelope] to another subject who was standing next to him" and the recipient of the envelope "then walked into the shopping center ... [and] into the grocery store." (Record at 8.) The officer did not see that person give anything to appellant in return for the envelope. (Record at 14.) The officer and his partner drove alongside appellant, identified themselves and asked appellant to remove the pouch, which he had placed into his pocket. When appellant refused, the officer took the pouch from appellant's pocket and opened it and found two envelopes—each containing what was later determined to be marijuana. Appellant was then placed under arrest.[1]

The trial court ruled that the officers under the circumstances had "reasonable grounds ... to believe that the man [appellant] at the time they went up had marijuana on him." (Record at 24.) The court stated "[O]ne may assume when he's been involved in one transaction ... it's probable to believe ... he had more on him ...."

(Record at 25.) Accordingly, the court upheld the arrest and search.

The decisions upholding arrests for the possession of prohibited substances have rested upon the police observing one of two things before they effected the arrest: either the suspect exchange the suspected drugs for money, or the suspect retain upon his person the suspected drugs. In the case of the prearrest observation of an *exchange* the court has recognized the probability that a suspect is engaged in dealing narcotics and therefore may be reasonably presumed to have still more narcotics in his possession even after the observed transaction. *Tobias v. United States*, D.C.App., 375 A.2d 491 (1977); *Peterkin v. United States*, D.C.App., 281 A.2d 567 (1971), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *Thompson v. United States*, D.C.App., 368 A.2d 1148 (1971).

In the case of the prearrest observation of the suspect's retention of the suspected drugs, the court has recognized the probability, indeed the virtual certainty, that he still has possession of drugs. *Price v. United States*, D.C.App., 429 A.2d 514 (1981). *Johnson v. United States*, D.C.App., 367 A.2d 1316 (1977); *Durant v. United States*, D.C.App., 292 A.2d 157, *cert. denied*, 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973); *Munn v. United States*, D.C.App., 283 A.2d 28 (1971); and *Thompson v. United States*, D.C.App., 368 A.2d 1148 (1971).

In the instant case, the police, before they effected appellant's arrest, observed neither an exchange[2] nor retention by him of any suspected drugs.[3] The government urges us (Brief at 4), to uphold the arrest for possession of narcotics in this case solely on the basis of the police observing appellant

---

1. A second police officer also testified at the suppression hearing, but he did *not* see appellant hand an envelope to another person, (Record at 19), and could only confirm the arrest and search of appellant. (Record at 18.)

2. This case is in contrast to *Durant v. United States*, D.C.App., 292 A.2d 157 (1972), where the police, upon observing a transfer rather than an exchange of suspected narcotics, pursued the recipient of the transfer "whom they had probable cause to believe was possessed of

narcotics" rather than the transferor. *Id.* at 158 n.1

3. The officers did not observe what was in appellant's pouch. There was no evidence that the pouch contained narcotics once the envelope was removed from it, and the pouch itself was not an item of contraband. Of course, the discovery of manila envelopes with marijuana in appellant's pouch after the police search does not justify the initial seizure.

in an area of high narcotics activity with a manila envelope of a type "normally used to package marijuana" in his possession at a point in time *prior* to his arrest. We decline to stretch our decisions to such lengths to encompass the situation in the instant case where the officers observed the suspect neither exchange the envelope for money nor retain any other item that reasonably appeared to be drugs. The possession at some prior time of an item suspected to contain drugs simply does not rise to the level of probability required to create probable cause to arrest that possessor for possession of drugs. Thus, we must reverse the conviction and remand the case with directions to suppress the marijuana.

*So ordered.*

NEBEKER, Associate Judge, dissenting:

The reasonableness of the police response, measured by objective standards, is the question in this case. See *Michigan v. Summers,* —— U.S. ——, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Given the facts of this case—fairly stated by Judge Kern—I perceive the police response (the seizure of the pouch) to be reasonable. To say that the failure to observe an exchange of something for the envelope makes the seizure unreasonable is unrealistic and puts a premium on traffickers arranging separate payment. To say that the delivery of the envelope means its original possessor no longer probably has any marijuana is equally unrealistic.

Common sense application of the exclusionary rule in Fourth Amendment cases is the hallmark of its continued acceptability and viability. It is the technical, impractical—almost nit-picking—analysis of facts for nonfacts which makes application of that rule the antithesis of reasonableness. My colleagues are deciding what is reasonable to them—not what is objectively reasonable given the facts and circumstances known to the police.